# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,　　　　:

　　　　Plaintiff,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　　　:　　　No. 3:11-cv-00176
　　　　　　　　　　　　　　　　　　　　　:
AIC, INC. <u>et al.</u>,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　Defendants,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　and　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
ALLIED BEACON PARTNERS, INC. (f/k/a　　　　:
Waterford Investor Services, Inc.) <u>et al.</u>,　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　Relief Defendants.　　　　　　　　:

## PLAINTIFF'S RESPONSE TO THE AIC DEFENDANTS' "MOTION TO DISMISS" AND OPENING BRIEF <u>IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO STRIKE</u>

G. Jeffrey Boujoukos
Michael J. Rinaldi
Scott A. Thompson

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, Pa. 19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
RinaldiM@sec.gov

Dated: October 17, 2011.

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................. 2

III.    PROCEDURAL HISTORY .................................................................................. 4

IV.     ARGUMENT ......................................................................................................... 6

A.    The AIC Defendants' "Motion to Dismiss" Is Procedurally Improper and, in Any
      Event, Meritless. .................................................................................................. 6

      1.    The AIC Defendants' Rule 12(b)(6) Motion Suffers from Several
            Procedural Defects ................................................................................. 6

            a.    The Rules Prohibit the Filing of Successive Rule 12 Motions,
                  and, in Any Event, a Rule 12(b) Motion Must Be Made Before
                  Answering the Complaint. ........................................................... 6

            b.    The AIC Defendants' Combination Answer–Rule 12(b)(6) Motion
                  Is Violative of Local Rule 7.1 .................................................... 7

            c.    The AIC Defendants' Answer Is Untimely .................................. 8

      2.    Even if Procedural Defects Are Excused, the AIC Defendants' "Motion to
            Dismiss" Is Still Meritless. .................................................................... 9

            a.    The Legal Standard ...................................................................... 9

            b.    The Commission Has Stated Claims Under Sections 5(a) and 5(c)
                  of the Securities Act. ................................................................ 10

            c.    The AIC Defendants' Arguments That the Commission's Section
                  17(a), Section 10(b), and Rule 10b-5 Claims Should Be Dismissed
                  Are Without Basis. .................................................................... 11

            d.    There Is No Reason to Dismiss the Commission's Exchange Act
                  Section 20(a) Claims Against Defendants AIC and CB
                  Securities. ................................................................................. 16

            e.    There Is No Basis to Dismiss the Commission's Claims Against
                  the Relief Defendants. .............................................................. 16

i

B. Several of the AIC Defendants' Affirmative Defenses Should Be Stricken Pursuant to Rule 12(f)...........................................................................................18

    1. The Legal Standard.....................................................................................19

    2. The AIC Defendants' Sixth, Eighth, and Ninth Affirmative Defenses Should Be Stricken As General Denials of Fault or As Otherwise Legally Insufficient......................................................................................19

    3. The Tenth Affirmative Defense Incorrectly Assumes That Loss Causation Is an Element of the Commission's Claims, and, Thus, the Affirmative Defense Should Be Stricken as Legally Insufficient...................................20

    4. The AIC Defendants' Ratification, Negligence, and Assumption of Risk Defenses Must Be Stricken........................................................................21

    5. The Commission Is Not Seeking "Damages" in This Litigation; Thus, the AIC Defendants' Mitigation of Damages Affirmative Defense Is Legally Insufficient..................................................................................22

    6. The AIC Defendants' "Deadman's Statute" Affirmative Defense Is Not an Affirmative Defense at All and, in Any Event, Does Not Apply in This Case Brought Under the Federal Securities Laws. ....................................23

    7. Those Affirmative Defenses That Are Also Styled "Motions to Dismiss" Should be Stricken in Part. ........................................................................23

V. CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Aaron v. SEC, 446 U.S. 680 (1980) ................................................................. 22

Berko v. SEC, 316 F.2d 137 (2d Cir. 1963) ..................................................... 22

Carver v. Bunch, 946 F.2d 451 (6th Cir. 1991)................................................. 9

FTC v. Hope Now Modifications, LLC, Civil No. 09-1204, 2010 WL 1463008
    (D.N.J. Apr. 12, 2010) ............................................................................... 20

Hand v. Houk, No. 2:07-cv-846, 2008 WL 5378358 (S.D. Ohio Dec. 23, 2008)......................... 7

Holloway v. Howerdd, 536 F.2d 690 (6th Cir. 1976) ............................... 15, 16

Hopkins v. Sellers, No. 1:09-CV-304, 2010 WL 3303651
    (E.D. Tenn. Aug. 19, 2010) .................................................................. 7, 8, 9

INS v. Hibi, 414 U.S. 5 (1973) ........................................................................ 21

Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674 (6th Cir. 1988) ................. 14

Morse v. Abbott Laboratories, 756 F. Supp. 1108 (N.D. Ill. 1991) ................ 16

Munsey v. Tactical Armor Prods., Inc., No. 3:07-CV-445, 2009 WL 3241721
    (E.D. Tenn. Sept. 30, 2009) ...................................................................... 10

Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978) ................... 6

Resolution Trust Corp. v. Ascher, 839 F. Supp. 764 (D. Colo. 1993) ........... 21

SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985) ................... 12, 13, 14, 15, 20

SEC v. Bravata, 763 F. Supp. 2d 891 (E.D. Mich. 2011)...................... 10–11

SEC v. Brincat, No. 01 C 2670, 2001 WL 1662099 (N.D. Ill. Dec. 6, 2001) .............. 20

SEC v. ConnectAJet.com, Inc., No. 3:09-CV-1742-B, 2010 WL 2484280
    (N.D. Tex. June 17, 2010) ......................................................................... 11

SEC v. Egan, 856 F. Supp. 401 (N.D. Ill. 1993) .......................................... 17

SEC v. E.L. Aaron & Co., No. 76 Civ. 907, 1977 WL 1013
    (S.D.N.Y. May 5, 1977) ............................................................................ 16

SEC v. Fisher, No. 07-CV-12552-DT, 2008 WL 822135 (E.D. Mich. Mar. 27, 2008) ............... 14

SEC v. George, 426 F.3d 786 (6th Cir. 2005) ........................................................................ 16–17

SEC v. Gulf & W. Indus., Inc., 502 F. Supp. 343 (D.D.C. 1980) ............................................ 21

SEC v. Keating, No. CV 91-6785, 1992 WL 207918 (C.D. Cal. July 23, 1992) ........................ 21

SEC v. Murphy, 626 F.2d 633 (9th Cir. 1980) ............................................................ 11, 13

SEC v. Nothern, 400 F. Supp. 2d 362 (D. Mass. 2005) ................................................... 19

SEC v. Ralston Purina Co., 346 U.S. 119 (1953) ............................................................ 11

SEC v. Rana Research, Inc., 8 F.3d 1358 (9th Cir. 1993) ................................................ 12

SEC v. Saltzman, 127 F. Supp. 2d 660 (E.D. Pa. 2000) .............................................. 12, 14

SEC v. Shaoulian, No. 00-4614-CBM, 2003 WL 26085847 (C.D. Cal. May 12, 2003) ............. 17

SEC v. Trabulse, 526 F. Supp. 2d 1001 (N.D. Cal. 2007) ............................................. 12, 13

Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036 (W.D. Tenn. 2011) ................. 19

United States v. Benavides, Civil Action No. B-07-108, 2008 WL 362682
    (S.D. Tex. Feb. 8, 2008) ............................................................................. 21

**FEDERAL STATUTES AND REGULATIONS**

15 U.S.C. § 77d ......................................................................................... 10

15 U.S.C. § 77e ......................................................................................... 10

15 U.S.C. §§ 77e(a) & 77e(c) .................................................................... 4, 10

15 U.S.C. § 77q(a) ................................................................................... 4, 12

15 U.S.C. §§ 77t(b) & 77t(d) ........................................................................ 22

15 U.S.C. § 78j(b) ................................................................................... 4, 12

15 U.S.C. § 78t(a) ......................................................................................... 4

15 U.S.C. § 78u(d) ....................................................................................... 22

15 U.S.C. § 78z......................................................................................................21

15 U.S.C. §§ 80b-6(1) & 80b-6(2) ..........................................................................5

28 U.S.C. §§ 1404(a) & 1406(a) ..............................................................................5

17 C.F.R. §§ 230.501 to 230.508............................................................................10

17 C.F.R. § 240.10b-5 .........................................................................................4, 12

## OTHER AUTHORITIES

3 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u>
 § 601.05(1)(a) (2d ed.).................................................................................23

3 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u>
 § 601.05(3) (2d ed.)....................................................................................23

5 Charles Alan Wright & Arthur R. Miller,
 <u>Federal Practice and Procedure:  Civil</u> § 1384 (1969)........................................7

5C Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1380 (3d ed.) ...........................19

Plaintiff Securities and Exchange Commission (the "Commission"), by and through its undersigned counsel, hereby submits this memorandum of law, which serves as both (a) the Commission's response to the AIC Defendants' Rule 12(b)(6) "motion to dismiss" and (b) the Commission's opening brief in support of the Commission's Rule 12(f) cross-motion to strike certain affirmative defenses set forth in the AIC Defendants' answer.[1]

## I.    **INTRODUCTION**

On September 28, 2011, the AIC Defendants filed their "Answer and Affirmative Defense and Renewed Objection to Venue."  However, this is more than a typical answer—or at least it purports to be.  The AIC Defendants included within their answer a motion to dismiss pursuant to Rule 12(b)(6).  Indeed, they cast the first five of their affirmative defenses as "motions to dismiss" and set forth argument in support of their "motion."

Of course, none of this is proper.  Motions under Rule 12 are not to be pursued in a piecemeal fashion, but, here, the AIC Defendants have filed a Rule 12(b)(6) motion even though they previously filed (and had denied) motions under Rule 12(b)(3) and Rule 12(e).  In any event, a motion under Rule 12(b)(6) is supposed to be a pre-answer exercise, meaning that it cannot be simply incorporated into an answer.  The AIC Defendants' hybrid answer–motion to dismiss also violates Local Rule 7.1, which requires a motion to be supported by a memorandum of law, wherein the movant is to present "a concise statement of the factual and legal grounds which justify the ruling sought from the Court."

---

[1] The "AIC Defendants" are defendants AIC, Inc. ("AIC"), Community Bankers Securities, LLC ("CB Securities"), and Nicholas D. Skaltsounis ("Skaltsounis") and relief defendants Allied Beacon Partners, Inc. (f/k/a Waterford Investor Services, Inc.) ("Allied Beacon" or "Waterford"), Advent Securities, Inc. ("Advent"), and CBS Advisors, LLC ("CBS Advisors").

1

Procedural defects aside, the "substance" of the AIC Defendants' filing fares no better. In their "motion to dismiss," the AIC Defendants rehash arguments made in their previously filed (and denied) Rule 12(e) motion, attempt to introduce facts beyond those set forth in the complaint, and make various legal arguments that have no basis in law. If the Court reaches the merits of the motion, it will find the motion to be without basis.

Finally, the filing contains numerous affirmative defenses that are simply not recognized under applicable law. Therefore, the Commission cross-moves to strike certain of the AIC Defendants' affirmative defenses pursuant to Rule 12(f). The Commission recognizes that the striking of affirmative defenses is a seldom exercised remedy but submits that this case presents an instance where such relief is warranted. The Commission's motion to strike only targets those affirmative defenses that are precluded as a matter of law, including affirmative defenses that cannot be asserted against a government agency such as the Commission. There is simply no point in allowing the AIC Defendants to pursue affirmative defenses that cannot succeed. Litigating such matters will only result in wasted time and resources, and the Commission respectfully requests that these affirmative defenses be stricken.

## II.    FACTUAL BACKGROUND

This is a civil enforcement action by the Commission against defendants AIC, CB Securities, Skaltsounis, John B. Guyette ("Guyette"), and John R. Graves ("Graves") and relief defendants Allied Beacon, Advent, and CBS Advisors.

As alleged in the complaint, Skaltsounis, during the relevant period, President and Chief Executive Officer of AIC, CB Securities, Advent, and CBS Advisors and Chairman of the board of directors of Allied Beacon (Compl. ¶ 15), devised and orchestrated an offering fraud and

2

Ponzi scheme. The scheme operated "through the sale of millions of dollars of AIC promissory notes and stock through misleading and false representations and disclosures that masked the underlying financial hardship of AIC and its inability to pay promised returns without using new investor money." (Id. ¶ 1.) In short, the defendants falsely marketed investments in AIC as "safe" and "secure," while making other material misrepresentations about AIC's business and omitting disclosures regarding the risks associated with investing, including that AIC and its subsidiaries had never been profitable, that AIC had almost no revenue from business operations, and that AIC's ability to pay the promised returns to investors depended on its ability to attract new investors. (Id. ¶¶ 30, 50–96.)

Ultimately, and as is alleged in the complaint, AIC raised over $7.7 million from at least 74 investors, in at least 14 states—including a significant number of investors from the State of Tennessee, who were serviced through a CB Securities office in Maryville, Tennessee. (Id. ¶¶ 29, 72.) Once investors were brought into the Ponzi scheme, the defendants' misrepresentations and omissions did not cease. In order to prevent the collapse of the scheme, defendants AIC, CB Securities, Skaltsounis, and Guyette (as well as a now-deceased, Tennessee-based AIC board member and CB Securities registered representative referred to in the complaint as "Broker A") induced investors to "rollover," "renew," or "reinvest" their AIC investments, including through the use of "rollover" letters. (Id. ¶ 36.) These letters fraudulently stated that AIC could pay the principal and accumulated interest on AIC promissory notes within ten days (AIC, in fact, lacked the ability to repay the notes) and omitted information material to the investors' reinvestment decisions, such as financial reports or any written disclosure regarding AIC's worsening financial condition, its inability to repay the notes without new investor money coming in, and the risks associated with renewing a note. (E.g., id. ¶¶ 36–40.)

By late 2009—when the scheme collapsed—AIC had approximately $4 million in note obligations on its books as a result of issuing new notes and rolling over old ones, and it was unable to meet these obligations.  (Id. ¶¶ 6, 41.)  AIC had also raised over $2.3 million through the sale of AIC common and preferred stock.  (Id. ¶ 42.)  Investors—including many unsophisticated and elderly investors—lost millions of dollars in the defendants' scheme.  (E.g., id. ¶ 6.)  As to where the money went, Skaltsounis paid himself almost a million dollars in a less than four-year period and caused over $3.5 million to be transferred to AIC's subsidiaries, namely defendant CB Securities and relief defendants Allied Beacon (then known as Waterford), Advent, and CBS Advisors, all of which he effectively controlled.  (Id. ¶¶ 32, 59.)

## III.    **PROCEDURAL HISTORY**

On April 15, 2011, the Commission filed this action, seeking injunctive relief, civil penalties, and orders of disgorgement.  The Commission asserts claims under Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  Because the defendants, in addition to violating the aforementioned antifraud provisions of the federal securities laws, also sold securities in violation of the Securities Act's registration requirements, claims are brought under Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) & 77e(c).  The Commission also seeks the imposition of controlling person liability against defendants AIC and CB Securities under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  In addition, because relief defendants

Allied Beacon, Advent, and CBS Advisors were recipients of the ill-gotten proceeds of defendants' fraud, orders of disgorgement are sought against them.[2]

On June 15, 2011, the AIC Defendants filed two motions: (a) a motion for a more definite statement under Federal Rule of Civil Procedure 12(e); and (b) a motion to transfer venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1404(a) and 1406(a). On July 20, 2011, these motions were referred to the Honorable H. Bruce Guyton. (Doc. No. 24.) On September 7, 2011, Magistrate Judge Guyton issued a memorandum and order denying the AIC Defendants' motions for a more definite statement and to transfer venue. (Doc. No. 30.[3])

On September 28, 2011, the AIC Defendants filed a document styled "Answer and Affirmative Defense and Renewed Objection to Venue" (hereinafter, "Answer" or the "AIC Defendants' Answer"). (Doc. No. 31.) Although the AIC Defendants' Answer appears to have many of the traditional elements of an answer under the Rules (including affirmative defenses), the AIC Defendants also assert arguments in their Answer styled as a "motion to dismiss" under Rule 12(b)(6).[4] Even though this "motion to dismiss" is procedurally improper for the reasons

---

[2] A claim under Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) & 80b-6(2), was also asserted against defendant Graves.

[3] One other motion was referred to Magistrate Judge Guyton on July 20: a motion by defendant Skaltsounis for an extension of time to file the motions for a more definite statement and to transfer venue. The Rule 12(e) and Rule 12(b)(3) motions filed by the AIC Defendants (defendant Skaltsounis is one of the AIC Defendants) were untimely as to defendant Skaltsounis. The Commission consented to the late filing, and the motion for an extension of time as to defendant Skaltsounis was granted on August 3. (Doc. No. 29.)

[4] Among other things, the Answer explicitly invokes Rule 12(b)(6) (AIC Defendants' Answer at 1), and the AIC Defendants specifically "move the Court to dismiss the complaint with prejudice" (id. at 20).

discussed infra, the Commission will nonetheless respond to the AIC Defendants' "motion to dismiss" contentions herein.[5]

Finally, the Commission contemporaneously herewith filed, pursuant to Rule 12(f), a cross-motion to strike certain of the affirmative defenses set forth in the AIC Defendants' Answer. (Doc. No. 33.) The present filing is both the Commission's response to the AIC Defendants' "motion to dismiss" and the Commission's opening brief in support of the Commission's cross-motion to strike.

## IV.  ARGUMENT

### A.  The AIC Defendants' "Motion to Dismiss" Is Procedurally Improper and, in Any Event, Meritless.

#### 1.  *The AIC Defendants' Rule 12(b)(6) Motion Suffers from Several Procedural Defects.*

Before discussing the substance of the AIC Defendants' "motion to dismiss," it is important to note that the AIC Defendants' Answer—which purports to contain a Rule 12(b)(6) motion—is procedurally improper. The AIC Defendants' "motion to dismiss" can be denied on that basis alone.

##### a.  *The Rules Prohibit the Filing of Successive Rule 12 Motions, and, in Any Event, a Rule 12(b) Motion Must Be Made Before Answering the Complaint.*

The AIC Defendants include a Rule 12(b)(6) motion as part of their Answer. But Rule 12(g)(2) requires a party to join all of their pre-answer Rule 12 defenses and objections in a single motion. See, e.g., Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 701 n.3 (6th Cir. 1978) ("[Rule 12(g)] contemplates the presentation of an omnibus pre-answer motion in which

---

[5] Defendants Guyette and Graves filed their own answers to the complaint and did not join in the AIC Defendants' Answer (including its "motion to dismiss"). Nor did Guyette and Graves join in the AIC Defendants' earlier motions for a more definite statement and to transfer venue.

defendant advances every available Rule 12 defense and objection he may have that is assertable by motion." (quoting 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil</u> § 1384 (1969))). Here, the AIC Defendants have already made (and had denied) motions under Rule 12(b)(3) and 12(e). They cannot file yet another Rule 12 motion that could have been made earlier.

Plus, under the Rules, a Rule 12(b) motion must be filed "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). In particular, "[t]he Rule does not envision that a motion to dismiss will be combined with an answer." <u>Hand v. Houk</u>, No. 2:07-cv-846, 2008 WL 5378358, at *2 (S.D. Ohio Dec. 23, 2008). Here, because the AIC Defendants' purported Rule 12(b)(6) motion was not filed before the Answer was filed, it should be denied.[6]

<div align="center">

**b.**      ***The AIC Defendants' Combination Answer–Rule 12(b)(6) Motion Is Violative of Local Rule 7.1.***

</div>

The AIC Defendants' Answer, to the extent that it purports to contain a Rule 12(b)(6) motion, is also violative of Local Rule 7.1, which requires the filing of an actual "motion," along with, at a minimum, an "opening brief," which includes "a concise statement of the factual and legal grounds which justify the ruling sought from the Court." Local Rule 7.1(a)–(b). In a circumstance similar to the present one, Chief Judge Collier denied a motion to dismiss that was simply incorporated into the defendant's answer. <u>See</u> <u>Hopkins v. Sellers</u>, No. 1:09-CV-304, 2010 WL 3303651, at *5 (E.D. Tenn. Aug. 19, 2010). Chief Judge Collier explained:

---

    [6] To be clear, the Commission is not contending that the AIC Defendants waived their argument that the Commission failed to state a claim upon which relief can be granted (as set forth in their affirmative defenses) by not making that argument in an earlier Rule 12(b)(6) motion. But, as Rule 12(h)(2) makes clear, to the extent that the AIC Defendants now wish to make a motion arguing that the Commission's claims are legally insufficient, the correct way to do that is through a motion for judgment on the pleadings under Rule 12(c). <u>See</u> Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").

<div align="center">7</div>

> Because Defendant Randy Sellers combined his answer and his motion to dismiss in one pleading, it was difficult for the Court to separate his answer from his motion to dismiss. For this reason, it is possible that some of his arguments were not comprehended. The Federal Rules of Civil Procedure provide for separate filings and give forms for answering a complaint, which is further explained in Rule 8(b). Local Rule 7.1 gives additional information about motion practice.

Id. at *1 n.1 (citation omitted).

And this is not merely a technical defect. As Chief Judge Collier went on to note: "In the context of a motion to dismiss for failure to state a claim, the moving party bears the burden of proof. Where the defendant fails to offer arguments supporting the assertion the plaintiff has failed to state a claim for relief, the motion should be dismissed." Id. at *5 (citations omitted).

Here, the Court is faced with a similar problem. The first five of the AIC Defendants' affirmative defenses are also cast as "motions to dismiss." Four of these contain no citation to decisional law or to the factual allegations in the complaint, even though Local Rule 7.1(b) requires the AIC Defendants to cite the "factual and legal grounds" for their motion in a brief. Not only is there a certain unfairness to the Commission in having to respond to undeveloped, boilerplate argument, but, for the reasons discussed by Chief Judge Collier, it is also the case that the failure to support a motion to dismiss with citations to the law and the record suggests that the burden imposed by Rule 12(b)(6) has not been met.

### c. *The AIC Defendants' Answer Is Untimely.*

Even if it were procedurally proper to fold a Rule 12(b)(6) motion into an answer, the AIC Defendants' Answer would nonetheless suffer from another infirmity: it was filed out of time.

Magistrate Judge Guyton issued his memorandum and order denying the AIC Defendants' motions for a more definite statement and to transfer venue on September 7, 2011,

8

and the parties were given electronic notice of that decision that same day. Under Federal Rule of Civil Procedure 12(a)(4)(A), a responsive pleading was to be served within fourteen days of the denial of the Rule 12(b)(3) and Rule 12(e) motions—or by no later than September 21. But the Answer was not filed until September 28, and the AIC Defendants neither sought nor obtained an extension of the Rule 12(a)(4)(A) deadline.

### 2. *Even if Procedural Defects Are Excused, the AIC Defendants' "Motion to Dismiss" Is Still Meritless.*

The first five of the AIC Defendants' affirmative defenses are also styled "motions to dismiss." (AIC Defendants' Answer at 2–5.) The Commission will address these "motions to dismiss" in the order in which they are presented in the Answer.

In short, the AIC Defendants have not come close to meeting their burden under Rule 12(b)(6). In the first four affirmative defenses also cast as "motions to dismiss," they cite no decisional law whatsoever, and, in the fifth, their arguments are based on a fundamental misunderstanding of governing law. The AIC Defendants also challenge the facts pled in the complaint, even though on a Rule 12(b)(6) motion the well-pleaded allegations in the complaint must be taken as true. And they make unsupported contentions that the Commission must plead reliance by individual investors, loss causation, and damages, even though controlling law is clear that the Commission need not plead or prove these things in a civil enforcement action.

### a. *The Legal Standard.*

On a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, the movant bears the burden of showing that no claim has been stated. See, e.g., Carver v. Bunch, 946 F.2d 451, 454–55 (6th Cir. 1991) (reversing grant of a motion to dismiss); Hopkins, 2010 WL 3303651, at *5 (on Rule 12(b)(6) motion, "the moving party bears the burden of proof"). "In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a

9

complaint must contain allegations supporting all material elements of the claims." Munsey v. Tactical Armor Prods., Inc., No. 3:07-CV-445, 2009 WL 3241721, at *1 (E.D. Tenn. Sept. 30, 2009). When deciding a Rule 12(b)(6) motion, "all well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant." Id. As this Court previously stated:

> The issue is not whether the plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his or her claim. Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

Id. (citation omitted).

**b.** ***The Commission Has Stated Claims Under Sections 5(a) and 5(c) of the Securities Act.***

In their "First Affirmative Defense and Motion to Dismiss," the AIC Defendants—apparently in response to the Commission's allegations that they sold unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c)—contend that "[t]he AIC investments are exempt from registration pursuant to § 4 of the Securities Act and Regulation D promulgated by the SEC." (AIC Defendants' Answer at 2.[7]) Importantly, the AIC Defendants do not contend that the Commission failed to state a prima facie case for violations of Sections 5(a) and 5(c). Nor could they. "The SEC establishes a prima facie violation of [Sections 5(a) and 5(c)] when it shows that (1) no registration was in effect as to a given security; (2) the defendant offered or sold the security; and (3) the offer or sale was accomplished through interstate commerce." SEC v. Bravata, 763 F. Supp. 2d 891, 917 (E.D.

---

[7] Although not explained by the AIC Defendants, Section 4 of the Securities Act, 15 U.S.C. § 77d, sets forth certain exemptions to the registration requirements of Section 5 of the Securities Act, 15 U.S.C. § 77e. Regulation D, 17 C.F.R. §§ 230.501 to 230.508, is a set of Commission rules that govern the limited offer and sale of unregistered securities.

Mich. 2011). Here, the Commission plainly alleged each of these required facts. (E.g., Compl. ¶¶ 48–49, 97–100 (alleging the offer or sale of unregistered securities through interstate commerce).)

To the extent that the AIC Defendants want to argue that an exemption from the registration requirements precludes liability in this case, they have "the burden of proof in showing entitlement to an exemption." SEC v. Murphy, 626 F.2d 633, 641 (9th Cir. 1980); see also SEC v. Ralston Purina Co., 346 U.S. 119, 126 (1953) ("Keeping in mind the broadly remedial purposes of federal securities legislation, imposition of the burden of proof on an issuer who would plead the exemption seems to us fair and reasonable."). But not only have the AIC Defendants not met their burden of proving the availability of such an exemption, consideration of such a factual issue is beyond the four corners of the complaint and is inappropriate in the context of a Rule 12(b)(6) motion. See SEC v. ConnectAJet.com, Inc., No. 3:09-CV-1742-B, 2010 WL 2484280, at *5 (N.D. Tex. June 17, 2010) (denying motion to dismiss; "In the case at bar, it is not clear from the face of the SEC's Amended Complaint whether Fayette is exempt from Section 5 liability. In order to determine if an exemption applies, the Court would need to consider factual issues beyond the face of the pleadings.").

If the AIC Defendants wish to argue that a registration exemption applies, they can attempt to prove that at a later stage in this litigation. These factual issues are not resolvable on a Rule 12(b)(6) motion.

        c.      ***The AIC Defendants' Arguments That the Commission's Section 17(a), Section 10(b), and Rule 10b-5 Claims Should Be Dismissed Are Without Basis.***

In their second and third affirmative defenses and motions to dismiss, the AIC Defendants make a variety of arguments regarding the Commission's claims under Section 17(a)

of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.[8]  None of the AIC Defendants' contentions has any support, and none has any merit.

First, the AIC Defendants argue that the Commission's Section 17(a), Section 10(b), and Rule 10b-5 claims must be dismissed because the Commission failed to identify, in its complaint, the individuals who purchased the AIC Investments.  The AIC Defendants made essentially the same argument in their earlier Rule 12(e) motion for a more definite statement, contending that the Commission was required to name each AIC investor in its complaint.  (Doc. No. 17.)  The Rule 12(e) motion was denied (Doc. No. 30), and the AIC Defendants' argument does not fare any better now.

The Sixth Circuit, in SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985) (per curiam), held that, "[u]nlike private litigants seeking damages, the Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money." Id. at 711.  Thus, "the SEC does not have to identify individual investors who relied upon the alleged misrepresentations or omissions." Trabulse, 526 F. Supp. 2d at 1005 (denying Rule 12(b)(6) motion); see also SEC v. Rana Research, Inc., 8 F.3d 1358, 1363–64 (9th Cir. 1993) (rejecting argument that SEC was required to prove that "at least one investor actually received, read and relied upon" the subject statements and purchased or sold in reliance thereon); SEC v. Saltzman, 127 F. Supp. 2d 660, 668 (E.D. Pa. 2000) (denying motion to dismiss Section 17(a), Section 10(b), and Rule 10b-5 claims based on failure of SEC to list

---

[8] The elements of an action under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder are, in general:  "(1) a material misstatement or omission (2) in connection with the offer or sale of a security (3) by means of interstate commerce." SEC v. Trabulse, 526 F. Supp. 2d 1001, 1004 (N.D. Cal. 2007) (citation omitted). "Violations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require scienter . . . .  Violations of Sections 17(a)(2) and (3) require a showing of negligence." Id. (citation omitted).

investors by name in the complaint).  Put simply, there is no requirement that the Commission

make allegations about individual victims in its complaint, and, indeed, the relevant decisional

law is to the contrary.[9]

Second, the AIC Defendants contend that the Commission failed to allege how certain

misrepresentations "were material to any of the unknown 'investors.'"  (AIC Defendants'

Answer at 2–3.)  But, again, the Commission is not required to allege or to prove that

misrepresentations or omissions were material to—or were relied upon by—any particular

individual investor; "it just has to allege that a reasonable investor would consider the fact

important in making an investment decision."  Trabulse, 526 F. Supp. 2d at 1005–06 (emphasis

in original); accord Blavin, 760 F.2d at 711.  What's more, the Sixth Circuit, in discussing

misstatements regarding a company's "financial condition, solvency, and profitability," noted

that "[t]he materiality of such information 'is not subject to serious challenge.'"  Blavin, 760

F.2d at 711 (quoting Murphy, 626 F.2d at 653).  This is precisely the type of information that the

Commission alleges was misstated or omitted by the defendants here.  (E.g., Compl. ¶¶ 1, 3–4,

28, 30, 33, 35–39, 45, 50–56, 58, 62–71, 80–82, 91–94.)

Third, the AIC Defendants contend that the Commission "fails to allege the time, place,

and circumstances of the 'fraud' with any particularity."  (AIC Defendants' Answer at 2–3.)

Again, this argument was made in the AIC Defendants' prior Rule 12(e) motion and rejected.

The complaint in this action is extraordinarily detailed, containing thirty-two pages of specific

allegations regarding, inter alia, the conduct of each individual defendant (e.g., Compl. ¶¶ 59–71,

---

[9] The AIC Defendants advance a similar argument with respect to the Commission's
claims under Sections 5(a) and 5(c) of the Securities Act.  Their argument that the Commission
was required to identify particular investors by name is just as baseless with respect to those
claims.  Moreover—as a practical matter and even though the Commission is not required in the
complaint to list by name each of AIC's investors—the AIC Defendants certainly know the
identities of their own investors.

77–96), the particular investments offered or sold by AIC (e.g., id. ¶¶ 33–47), and defendants' misrepresentations and omissions (e.g., id. ¶¶ 28, 30–31, 35–40, 45–46, 50–96). "The purpose underlying the particularity requirement of Rule 9(b) is to provide the defendant fair notice of the substance of the plaintiff's claim, so that the defendant may prepare a responsive pleading." SEC v. Fisher, No. 07-CV-12552-DT, 2008 WL 822135, at *2 (E.D. Mich. Mar. 27, 2008) (citing Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988)). Far from a barebones pleading, the Commission's complaint here provides the AIC Defendants with ample information about the claims made against them, which, of course, is evidenced by the fact that they responded to those allegations in their Answer.

Fourth, the AIC Defendants claim that the complaint "fails to allege scienter and/or how Defendants 'knowingly or recklessly' defrauded any of the unknown 'investors.'" (AIC Defendants' Answer at 2–3.) The AIC Defendants' argument is baseless. "[S]cienter may be alleged generally," Fisher, 2008 WL 822135, at *2,[10] and the Commission alleges that the AIC Defendants acted knowingly or recklessly (e.g., Compl. ¶¶ 3, 31, 56, 58, 62, 102, 105) and that, inter alia, they made material misrepresentations and omissions to investors and prospective investors in written materials and in oral communications (e.g., id. 50–96). These allegations are more than sufficient to plead scienter.

Fifth, the AIC Defendants assert that the complaint is "riddled" with the "SEC's value judgments," "mischaracterizations," and "legal conclusions." (AIC Defendants' Answer at 2–3.) The AIC Defendants are apparently contending that the facts are not as alleged in the complaint. But such arguments are not proper on a Rule 12(b)(6) motion, where the allegations in the

---

[10] In the securities law context, to act with "scienter" means to act knowingly or recklessly. See Blavin, 760 F.2d at 711–12; Saltzman, 127 F. Supp. 2d at 666–67.

complaint are taken as true.  The Commission has pled sufficient facts at this stage of the litigation.

Sixth—and as to only the Section 17(a) claims—the AIC Defendants contend that the Commission fails to allege "the receipt of any money or property by Skaltsounis individually." (AIC Defendants' Answer at 2.)  Putting aside that such receipt of money or property is not one of the elements of a Section 17(a) claim, see supra note 8, the Commission did, in fact, allege that Skaltsounis "paid himself $952,258 in salary, advances, loans, interest, and dividends during the relevant period" (Compl. ¶ 32).  This argument clearly fails.

Seventh—and as to only the Section 10(b) and Rule 10b-5 claims—the AIC Defendants argue that the Commission "fails to allege that [CB Securities] and Skaltsounis were the makers of any untrue statement" and "fails to allege how any misrepresentation or omission proximately caused any alleged loss."  (AIC Defendants' Answer at 3.)  As to the former point, the AIC Defendants mischaracterize the Commission's complaint:  the complaint is replete with allegations that Skaltsounis and registered representatives of CB Securities (namely, "Broker A" and defendants Guyette and Graves) made false statements to investors and prospective investors.  (E.g., Compl. ¶¶ 56–96.[11])  As to the latter point, "[u]nlike private litigants seeking damages, the Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money."  Blavin, 760 F.2d at 711.  It follows that the AIC Defendants' arguments are without basis and that their "motion to dismiss" must be denied.

---

[11] The acts of a firm's employees can be imputed to the company under the doctrine of respondeat superior.  See Holloway v. Howerdd, 536 F.2d 690, 695–96 (6th Cir. 1976) (case under Securities Act and Exchange Act).

**d.**     ***There Is No Reason to Dismiss the Commission's Exchange Act Section 20(a) Claims Against Defendants AIC and CB Securities.***

The "Fourth Affirmative Defense and Motion to Dismiss" states: "In addition to the fact that Plaintiff fails to allege a single primary securities law violation, AIC and [CB Securities] cannot be both the primary securities law violators and the control persons." (AIC Defendants' Answer at 3.)

As to the supposed failure to allege a primary securities law violation—and for the reasons set forth above—the Commission has certainly alleged securities law violations by each of the defendants.

As to whether AIC and CB Securities can be both a primary violator and a control person, Section 20(a) is a well-recognized basis (though not the exclusive basis) for imputing liability to a corporate defendant. See SEC v. E.L. Aaron & Co., No. 76 Civ. 907, 1977 WL 1013, at *6 n.8 (S.D.N.Y. May 5, 1977). A corporate defendant can also be held liable under the principle of respondeat superior. See Holloway, 536 F.2d at 695–96. Defendants AIC and CB Securities do not contest these legal principles, nor do they contend that the Commission has not stated a claim against them under Section 20(a), other than their baseless argument that no claim for primary liability has been stated against the other defendants, who were representatives of either AIC or CB Securities. And they do not explain why the Commission cannot maintain alternative theories of liability. Indeed, in Morse v. Abbott Laboratories, 756 F. Supp. 1108 (N.D. Ill. 1991), the district court refused to dismiss a Section 20(a) count that the defendants regarded as "redundant." See id. at 1112. Here, the same result is warranted.

**e.**     ***There Is No Basis to Dismiss the Commission's Claims Against the Relief Defendants.***

In SEC v. George, 426 F.3d 786 (6th Cir. 2005), the Sixth Circuit explained:

> A relief defendant (sometimes referred to as a nominal defendant) may "be joined to aid the recovery of relief" and "has no ownership interest in the property which is the subject of litigation." "Federal courts may order equitable relief against [such] a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds."

Id. at 798 (citations omitted).

The relief defendants here (Allied Beacon, Advent, and CBS Advisors) do not question these basic and well-established legal principles. Rather, they appear to contend that they have a legitimate claim to the funds in question because they used the funds transferred from AIC (which the Commission alleges are proceeds of fraud) to pay various of their own expenses, including payments to the relief defendants' employees and registered representatives. (See AIC Defendants' Answer at 5.)

But whether Allied Beacon, Advent, and CBS Advisors are proper relief defendants turns on whether they have a legitimate claim to the funds received from defendant AIC—not which of their expenses they decided to pay with the funds received from AIC. Cf. SEC v. Egan, 856 F. Supp. 401, 402 (N.D. Ill. 1993) ("Relief Defendants may not have been directly culpable in the securities violations, but what the SEC seeks to have them disgorge are the benefits that they derived from the violations by the culpable defendants." (emphasis in original)).[12]

Here, the Commission has alleged that relief defendants Allied Beacon, Advent, and CBS Advisors received proceeds of defendants' fraud, to which each of the relief defendants has no legitimate claim. (E.g., Compl. ¶¶ 8, 32, 115–17.) The Commission has thus stated a claim

---

[12] The AIC Defendants also contend that the Commission "fails to allege that the Relief Defendants are still holding any of the funds." (AIC Defendants' Answer at 5.) But, as the district court in SEC v. Shaoulian, No. 00-4614-CBM, 2003 WL 26085847 (C.D. Cal. May 12, 2003), explained, it does not matter "whether [a] relief defendant no longer possesses all or some of the ill-gotten gains when the Commission files its suit." Id. at *5.

against each of the relief defendants, and the Rule 12(b)(6) motion as to the relief defendants should be denied.

### B. Several of the AIC Defendants' Affirmative Defenses Should Be Stricken Pursuant to Rule 12(f).

Federal Rule of Civil Procedure 12(f) authorizes the striking of an "insufficient defense." The Commission recognizes that the striking of affirmative defenses is relief seldomly granted. But here the Court is presented with affirmative defenses that are clearly legally insufficient. Striking inappropriate affirmative defenses—particularly ones that cannot succeed as a matter of law—will streamline this litigation and eliminate issues that have no bearing on the present dispute, thus conserving the resources of the Court and of the litigants and eliminating the potential for prejudice.[13]

In particular, the Commission requests that the sixth, eighth, ninth, tenth, twelfth, and thirteenth affirmative defenses be stricken in full. With the exception of the first two sentences of the first affirmative defense and with the exception of the first sentence of each of the second, third, fourth, and fifth affirmative defenses, each of these affirmative defenses should also be stricken.[14] And the eleventh affirmative defense should be stricken to the extent that it references "ratification, assumption of the risk, and negligence." The Commission will present to the Court a proposed form of order reflecting the relief sought in its cross-motion to strike.

---

[13] The Commission does not concede that the AIC Defendants' other affirmative defenses (i.e., those not subject to this cross-motion to strike) have any validity and will address them at an appropriate time.

[14] Those parts of the headings for the first through fifth affirmative defenses that contain the words "and MOTION TO DISMISS" should also be stricken.

## 1.    *The Legal Standard.*

Federal Rule of Civil Procedure 12(f) states that a court may "strike from a pleading an insufficient defense."[15] "A defense is insufficient if as a matter of law, the defense cannot succeed under any circumstances." Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036, 1047 (W.D. Tenn. 2011) (citations and internal quotation marks omitted). "A motion to strike [affirmative defenses] may be granted if it aids in eliminating spurious issues before trial, thereby streamlining the litigation." Id. (citation and internal quotation marks omitted). However, it is not necessary for the Commission to identify specific instances in which the objectionable affirmative defenses would cause it to unnecessarily expend time or money. See SEC v. Nothern, 400 F. Supp. 2d 362, 367 (D. Mass. 2005) (striking an affirmative defense even where "[t]he SEC has done little to point out specific instances where [defendant's] estoppel defense would actually cause it to expend inordinate amounts of time and money" and noting that "the fact remains that [defendant's] affirmative defense is ill-begotten and appropriately stricken").

## 2.    *The AIC Defendants' Sixth, Eighth, and Ninth Affirmative Defenses Should Be Stricken As General Denials of Fault or As Otherwise Legally Insufficient.*

In their sixth, eighth, and ninth affirmative defenses, the AIC Defendants contend that the defendants' conduct is "neither illegal, nor a 'Ponzi' scheme," that "Defendants did not make any untrue statements of any material facts or omit any material facts," and that "Defendants had no motive to lie to any investor," "did not act with scienter," and "acted at all times in good faith." (AIC Defendants' Answer at 6.) With the exception of the claim to have acted in good

---

[15] "A motion to strike under Federal Rule 12(f) . . . is the primary procedure for objecting to an insufficient defense." 5C Charles Alan Wright et al., Federal Practice and Procedure § 1380 (3d ed.). Rule 12(f) also permits the striking of "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.

faith, all of these are nothing more than general denials of fault and not true affirmative defenses and should be stricken on that basis. See, e.g., FTC v. Hope Now Modifications, LLC, Civil No. 09-1204, 2010 WL 1463008, at *1 (D.N.J. Apr. 12, 2010) ("The Court will strike the first three affirmative defenses as redundant, as they are general denials of fault, and not true affirmative defenses."). As to the "good faith" affirmative defense, the court in SEC v. Brincat, No. 01 C 2670, 2001 WL 1662099 (N.D. Ill. Dec. 6, 2001), struck a similar affirmative defense as "legally insufficient" because bad faith was not an element of the SEC's claims under Section 17(a), Section 10(b), and Rule 10b-5. Id. at *1. As the Brincat court put it, "Even if [defendant] acted in good faith, he may still be liable for securities fraud if he acted recklessly or negligently." Id. It follows that the sixth, eighth, and ninth affirmative defenses should be stricken.

> **3.** **_The Tenth Affirmative Defense Incorrectly Assumes That Loss Causation Is an Element of the Commission's Claims, and, Thus, the Affirmative Defense Should Be Stricken as Legally Insufficient._**

In their "Tenth Affirmative Defense," defendants AIC, CB Securities, and Skaltsounis contend that they "did not cause any loss claimed by any investor." (AIC Defendants' Answer at 6.) But, as explained in the above response to the Rule 12(b)(6) motion, loss causation is not an element of the Commission's securities law claims. See, e.g., Blavin, 760 F.2d at 711 ("Unlike private litigants seeking damages, the Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money."). To allow the AIC Defendants to maintain this affirmative defense would not only be pointless (because it fails as a matter of law) but also would lead to the Court and the parties unnecessarily expending time and resources on such issues. Accordingly, the "Tenth Affirmative Defense" should be stricken.

### 4. *The AIC Defendants' Ratification, Negligence, and Assumption of Risk Defenses Must Be Stricken.*

The "Eleventh Affirmative Defense" is a mishmash of boilerplate defenses, three of which are plainly insufficient as a matter of law:  ratification, negligence, and assumption of the risk.  The AIC Defendants asserted these defenses even though established law precludes their assertion against the government, and they make no sense in the context of a civil enforcement action by the government under the federal securities laws.

As to the first of these, a ratification affirmative defense "directly conflicts with the established law that the SEC cannot be held to have ratified illegal acts."  SEC v. Keating, No. CV 91-6785, 1992 WL 207918, at *4 (C.D. Cal. July 23, 1992).  Perhaps as a testament to how established this point of law is, the Keating court noted that Section 26 of the Exchange Act, 15 U.S.C. § 78z, "has specifically been held to preclude a defense of ratification."  Keating, 1992 WL 207918, at *4 (citing SEC v. Gulf & W. Indus., Inc., 502 F. Supp. 343, 348 (D.D.C. 1980)).

As to the negligence defense, such a defense is not applicable against the government, because "neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest."  United States v. Benavides, Civil Action No. B-07-108, 2008 WL 362682, at *3 (S.D. Tex. Feb. 8, 2008) (quoting INS v. Hibi, 414 U.S. 5, 8 (1973)).  Indeed, the district court in Keating rejected a similar affirmative defense that "the SEC failed to exercise reasonable and ordinary care" and noted that "[t]hese allegations simply do not state a cognizable defense to an action brought by a law enforcement agency to prevent further illegal conduct."  1992 WL 207918, at *4.

Finally, it is unclear how a federal regulatory agency can be said to have assumed the risk that defendants would violate the law.  Cf. Resolution Trust Corp. v. Ascher, 839 F. Supp. 764, 766 (D. Colo. 1993) (striking assumption of risk affirmative defense to the extent it implicated

"the conduct of the RTC or other federal regulatory agencies"). Although an assumption of risk affirmative defense might have application in, for instance, a tort-negligence action between private parties, it simply does not have any application here and should be stricken.

These affirmative defenses cannot succeed as matter of law, and they invite irrelevant inquiries. The focus of this civil enforcement action is the <u>defendants'</u> conduct. The "Eleventh Affirmative Defense" should be stricken to the extent it refers to "ratification, assumption of the risk, and negligence."

     **5.**    *The Commission Is Not Seeking "Damages" in This Litigation; Thus, the AIC Defendants' Mitigation of Damages Affirmative Defense Is Legally Insufficient.*

In the "Twelfth Affirmative Defense," the AIC Defendants allege that "Plaintiff has failed to mitigate any damage caused by any act of any Defendant." (AIC Defendants' Answer at 7.) But Securities Act Sections 20(b) and 20(d) and Exchange Act Section 21(d) authorize the Commission to seek civil penalties and equitable relief (such as disgorgement)—not damages. <u>See</u> 15 U.S.C. §§ 77t(b), 77t(d), & 78u(d); <u>see also</u> <u>Aaron v. SEC</u>, 446 U.S. 680, 689 (1980) (recognizing distinction between private action for damages and SEC action for injunctive relief); <u>Berko v. SEC</u>, 316 F.2d 137, 143 (2d Cir. 1963) (reliance, loss causation, and damages not relevant because "the Commission's duty is to enforce the remedial and preventive terms of the statute in the public interest, and not merely to police those whose plain violations have already caused demonstrable loss or injury"). Put simply, like several of their other affirmative defenses, this one simply does not "fit" the context of an SEC civil enforcement action. It also invites inquiry into matters wholly irrelevant to this action and thus should be stricken as legally insufficient.

**6.** ***The AIC Defendants' "Deadman's Statute" Affirmative Defense Is Not an Affirmative Defense at All and, in Any Event, Does Not Apply in This Case Brought Under the Federal Securities Laws.***

In their "Thirteenth Affirmative Defense," the AIC Defendants contend that "Plaintiff's claims are barred, in whole or part, by the Deadman's Statute." Generally speaking, a "Dead Man's Act" is a state statutory provision that "prohibit[s] the party-witness and other interested persons from testifying to conversations, transactions, or other dealings with a decedent or incompetent when the decedent's estate or the incompetent's representative is an adverse party." 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 601.05(1)(a) (2d ed.). The AIC Defendants do not specify to which state's statute they are referring, even though state Dead Man's Acts "vary widely in their terms." Id.

This affirmative defense should be stricken because Dead Man's Acts—even where they apply—are not affirmative defenses but evidentiary rules of witness competency. Thus, these state provisions do not apply in this case under the federal securities laws. Federal Rule of Evidence 601 provides that "[e]very person is competent to be a witness except as otherwise provided in these rules" and the advisory committee's note to Rule 601 states that the Federal Rules of Evidence "contain no provision of this kind [referring to state Dead Man's Acts]." As Judge Weinstein put it, "[b]ecause the competency of witnesses in federal question cases is determined solely by federal law pursuant to Rule 601, state competency law does not apply." 3 Weinstein's Federal Evidence § 601.05(3). Thus, the AIC Defendants' invocation of a generic Dead Man's Act is an insufficient defense and should be stricken.

**7.** ***Those Affirmative Defenses That Are Also Styled "Motions to Dismiss" Should Be Stricken in Part.***

The first five of the AIC Defendants' affirmative defenses are also cast as "motions to dismiss." Each of these affirmative defenses begins with a one-sentence statement that one of

the Commission's claims for relief fails to state a claim upon which relief can be granted (for instance, the "First Affirmative Defense and Motion to Dismiss" is directed to the Commission's first claim for relief). Much of what remains are various legal arguments supporting the AIC Defendants' "motions to dismiss." For the reasons set forth in Part IV.A., supra, these "motions to dismiss" are both procedurally improper and substantively meritless.

But the inclusion of these arguments has another consequence, which is relevant to the instant cross-motion to strike. By including these various "motion to dismiss" arguments in sections also styled as "affirmative defenses," the AIC Defendants have asserted various legally insufficient affirmative defenses. For instance, the AIC Defendants, in their first through fifth affirmative defenses, allege, inter alia, that the Commission failed to allege loss causation and that the Commission failed to list individual defrauded investors by name.[16] Not only are these defenses legally insufficient, but they will invite irrelevant inquiries, with the consequent expenditure of time and effort by the Court and the parties.

The Commission respectfully suggests that the best course of action is to strike all but the first and second sentences in the first affirmative defense[17] and all but the first sentence of the second through fifth affirmative defenses.[18] The AIC Defendants would thus have their defenses that the Commission failed to state a claim upon which relief can be granted, but all of the legally insufficient (and immaterial and impertinent) matter would be removed from the

---

[16] For the sake of brevity, the Commission will not repeat the reasons why the various arguments made in the first through fifth affirmative defenses and motions to dismiss are wrong. The reasons are set forth in detail in Part IV.A.2., supra.

[17] In the second sentence of the "First Affirmative Defense and Motion to Dismiss," the AIC Defendants contend that "[t]he AIC investments are exempt from registration pursuant to § 4 of the Securities Act and Regulation D promulgated by the SEC." Although the AIC Defendants are wrong about the investments being exempt from the registration requirements, the Commission does not object to them maintaining this affirmative defense for now.

[18] The Commission also requests that the reference to "and MOTION TO DISMISS" be stricken from each of the headings of the first five affirmative defenses.

24

affirmative defenses, thereby streamlining the AIC Defendants' defenses and this litigation more generally.

## V.   **CONCLUSION**

For all of the foregoing reasons, the AIC Defendants' "motion to dismiss" should be denied, and the Commission's Cross-Motion to Strike should be granted.

<div style="margin-left: 40%;">

Respectfully submitted,

Dated:  October 17, 2011.

s/ Michael J. Rinaldi
G. Jeffrey Boujoukos
Michael J. Rinaldi
Scott A. Thompson

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, Pa.  19106
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740
RinaldiM@sec.gov

</div>

25

## CERTIFICATE OF SERVICE

I hereby certify, this seventeenth day of October, 2011, that I served a true and correct copy of the foregoing Plaintiff's Response to the AIC Defendants' "Motion to Dismiss" and Opening Brief in Support of Plaintiff's Cross-Motion to Strike, by the means indicated, upon the following:

Garrett P. Swartwood, Esq.
Long, Ragsdale & Waters, P.C.
1111 Northshore Drive, S-700
Knoxville, Tenn. 37919
(by the Court's electronic filing system)

Steven S. Biss, Esq.
300 W. Main St., Ste. 102
Charlottesville, Va. 22903
(by first-class mail, postage prepaid)

Elliot P. Park, Esq.
Park and Company, P.C.
1011 E. Main St., Ste. 300
Richmond, Va. 23219
(by first-class mail, postage prepaid)

Mr. John B. Guyette
2559 53rd Avenue
Greeley, Colo. 80634
(by first-class mail, postage prepaid)

Mr. John R. Graves
4300 W. Francisco Road, Unit 11
Pensacola, Fla. 32504
(by first-class mail, postage prepaid)

s/ Michael J. Rinaldi
Michael J. Rinaldi