IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 3:11cv00176 |
| AIC, INC. et al., | ) ) | |
| Defendants. | ) ) | |
| and | ) ) | |
| ALLIED BEACON PARTNERS, INC., et al., | ) ) ) | |
| Relief Defendants. | ) ) | |

## RESPONSE AND OPPOSITION
## TO PLAINTIFF'S CROSS-MOTION TO STRIKE

Defendants, AIC, Inc. ("AIC"), Community Bankers Securities, LLC ("CBS"), and Nicholas D. Skaltsounis ("Skaltsounis") (AIC, CBS and Skaltsounis are collectively referred to as the "Defendants"), and Relief Defendants, Allied Beacon Partners, Inc. (f/k/a Waterford Investors Services, Inc.), Advent Securities, Inc., and CBS Advisors, LLC (collectively referred to as the "Relief Defendants"), by counsel, pursuant to Local Rule 7.1(c), respectfully submit the following Response and Opposition to plaintiff's cross-motion to strike certain affirmative defenses contained in the Answer and

1

Affirmative Defenses and Renewed Objection to Venue [*Docket No. 31*] filed by Defendants and Relief Defendants:

## I. <u>Introduction</u>

In responding to a pleading, a party must state in short and plain terms its defenses to each claim asserted against it. Any avoidance and affirmative defenses must be affirmatively stated. *Rule 8(b)(1)(A) and 8(c)(1).* Every defense to a claim for relief must be asserted in the responsive pleading. *Fed. R. Civ. Pro. Rule 12(b).* The defense of "failure to state a claim upon which relief can be granted" may be raised "in any pleading allowed … under Rule 7(a) … or … at trial." *Rule 12(h)(2).*

In their response to plaintiff's complaint, Defendants and Relief Defendants stated in short and plain terms their defenses to each claim asserted, and the reasons why each claim is defective. In their First through Fifth Affirmative Defenses, Defendants and Relief Defendants raise and preserve the defense of "failure to state a claim upon which relief can be granted."[1] Plaintiff asks the Court to short-circuit this litigation and strike valid affirmative defenses pursuant to Rule 12(f), prior to any discovery being taken and without affording Defendants the opportunity to confront and challenge plaintiff's false and unsupportable allegations. Because striking a portion of a pleading is a drastic remedy, and because it is often sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted. Indeed, "[a] motion to strike should be granted only when the pleading stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201

---

[1] Defendants and Relief Defendants do not object to plaintiff's request that the words "Motion to Dismiss" be stricken from the Answer and Affirmative Defenses.

F.2d 819, 822 (6th Cir. 1953); *SEC v. Cuban*, 2011 WL2858299 * 3 (N.D. Tex. 2011) (quotations omitted).

For the reasons stated below, Defendants and Relief Defendants respectfully request the Court to deny plaintiff's motion to strike.

## II. Response and Opposition

### A. Defendants' First Affirmative Defense – Third Sentence

In its first claim for relief, plaintiff alleges that Defendants "violated Section 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and 77e(c)]." *Complaint [Docket No. 1], ¶ 100*. In their Answer and Affirmative Defenses, Defendants deny plaintiff's claim and raise the following defenses:

> "Plaintiff's first claim for relief fails to state a claim upon which relief can be granted. The AIC investments are exempt from registration pursuant to § 4 of the Securities Act and Regulation D promulgated by the SEC. Further, Plaintiff fails to identify any "investor" to whom AIC offered or sold an unregistered security."

*First Affirmative Defense [Docket No. 31, p. 2 of 23].*

Plaintiff moves to strike the third sentence of Defendants' First Affirmative Defense. Plaintiff's motion should be denied.

In order to prove a violation of § 5 of the Securities Act of 1933, Plaintiff must prove that the Defendants offered to sell or sold a "security" to *someone*.

### 1. Section 5 of the Securities Act of 1933

Section 5 of the Securities Act of 1933 (the "33 Act") makes it unlawful for any person to "offer to sell" any "security", unless a registration statement has been filed with the Securities and Exchange Commission (hereinafter referred to as the "Commission") as to such security. Section 5 also makes it unlawful for any person to "sell" a "security",

3

unless a registration statement is in effect as to such security. *15 U.S.C. §§ 77e(a) and 77e(c).*

To establish a *prima facie* case under § 5, plaintiff must show (1) that the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect. Once a prima facie case has been made, the defendant bears the burden of proving the applicability of an exemption. *SEC v. Cavanagh*, 445 F.3d 105, 111 fn. 13 (2nd Cir. 2006); *SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004).

The term "sell" includes "every contract of sale or disposition of a security … for value." The term "offer to sell" or "offer" includes every "attempt or offer to dispose of, or solicitation of an offer to buy, a security … for value." *15 U.S.C. § 77b(3).*

Plainly, for Defendants to have violated § 5 of the 33 Act, they must have sold or offered to sell a security to a third-party for "value".

The SEC fails to identify *any* person to whom an AIC Investment was sold or to whom Defendants offered to sell any security for "value". The SEC merely alleges that Defendants offered and sold AIC Investments to "investors". *Complaint [Docket No. 1], ¶¶ 2, 26, 29, 30, 31, 32, 33, 35, 36, 38, 39, 44, 45, 47, 53, 54, 55, 56, 58, 61, 62, 63, 67, 68, 69, 70, 71, 74, 76, 78, 80, 81, 82, 93, 96.* The SEC's vague and conclusory allegations are not sufficient to allege an "offer to sell" or a "sale" to anyone under § 5 of the 33 Act.

### a. <u>Exemption</u>

The identity of the alleged "investors" is also relevant to the issue whether the AIC Investment transactions themselves are even subject to § 5 of the 33 Act.

4

Section 4(b) of the 33 Act underscores that the provisions of Section 5 do not apply to "transactions by an issuer not involving a public offering". *15 U.S.C. § 77d(b).* Offers and sales of securities by an issuer that satisfy the conditions of Rule 506(b) of Regulation D promulgated by the Commission, *17 C.F.R. § 430.506*, "shall be deemed to be transactions not involving any public offering within the meaning of Section 4(b) of the [33] Act.".

To satisfy the conditions of Rule 506(b) and qualify for an exemption, the offers and sales must satisfy all the terms and conditions of Rules 501 and 502 and there must be "no more than or the issuer reasonably believes that there are no more than 35 purchasers of securities from the issuer in any offering" under Rule 506. *Rule 506(b)(1) and 506(b)(2)(i).* For purposes of calculating the number of purchasers under Rule 506(b), the following purchasers "shall be **excluded**:

> i.      Any relative, spouse or relative of the spouse of a purchaser who has the same principal residence as the purchaser;
>
> ii.      Any trust or estate in which a purchaser and any of the persons related to him … collectively have more than 50 percent of the beneficial interest (excluding contingent interests);
>
> iii.      Any corporation or other organization of which a purchaser and any of the persons related to him … collectively are beneficial owners of more than 50 percent of the equity securities … or equity interests; and
>
> iv.      Any accredited investor."

Rule 501(e)(1) (emphasis added).

An "accredited investor" is a person who comes within any of the categories enumerated in Rule 501(a)(1-8) or who the issuer (AIC) "reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person". The terms "accredited investor" includes (A) any "director, executive officer, or

general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer", (B) "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000", (C) "[a]ny natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year", and (D) an entity in which "all of the equity owners are accredited investors." *Rule 501(a)(4), (a)(5), (a)(6), and (a)(8).*

Rule 502(b) provides that if an issuer sells securities under Rule 506 to "any purchaser that is not an accredited investor", the issuer must furnish the information specified in paragraph 502(b)(2) to "such purchaser a reasonable time prior to sale." An issuer "is not required to furnish the specified information to purchasers when it sells securities …to any accredited investor." Rule 506(b)(2)(ii) further provides that each purchaser "who is not an accredited investor" must have "such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or the issuer reasonably believes immediately prior to making any sale that such purchaser comes within this description."

Each of AIC's three (3) offerings between 2006 and 2009 (the "relevant period" defined by Plaintiff) was made pursuant to Rule 506 of Regulation D. Form D – Notice of Sale of Securities Pursuant to Regulation D – was prepared and filed with the Commission by counsel for AIC (Troutman Sanders LLP) with each offering. AIC's Form D filings are attached hereto as *Exhibits "A", "B' and "C"*. In order for the

Defendants to have any liability under § 5 of the 33 Act, the AIC Investment transactions must be subject to § 5 of the 33 Act. To prove its case at trial, plaintiff eventually will have to identify the "74 investors in at least 14 states", *Complaint [Docket No. 1], ¶ 2*, that apparently are the subject of plaintiff's first claim for relief. Plaintiff's failure and/or refusal to identify these "investors" means that the Court and the Defendants will have to endure costly litigation.

The third sentence of Defendants' First Affirmative Defense is relevant to plaintiff's *prima facie* case and to Defendants' exemption defense. Plaintiff's motion to strike should be denied.

**B.** **Second Affirmative Defense – Second through Sixth Sentences**

In its second claim for relief, plaintiff alleges that Defendants "violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]." *Complaint [Docket No. 1], ¶ 103*. In their Answer and Affirmative Defenses, Defendants deny plaintiff's claim and raise the following defenses:

> "Plaintiff's second claim for relief fails to state a claim upon which relief can be granted. Plaintiff fails to identify the "purchaser" of any AIC Investment upon whom Defendants allegedly practiced "fraud" or "deceit" in violation of § 17(a) of the Securities Act. Plaintiff fails to allege the time, place, and circumstances of the "fraud" with any particularity, or the receipt of any money or property by Skaltsounis individually. The complaint is riddled with the SEC's value judgments about what is "meaningful", mischaracterizations of written documents that are not attached to the complaint, and mere legal conclusions. The complaint fails to allege how or why the generalized statements were material to any of the unknown "investors", some of whom being gratuitously labeled "unsophisticated and elderly". The complaint also fails to allege scienter and/or how Defendants "knowingly or recklessly" defrauded any of the unknown "investors"."

*Second Affirmative Defense [Docket No. 31, p. 2 of 23]*.

Plaintiff moves to strike the second through sixth sentences of Defendants' Second Affirmative Defense. Plaintiff's motion should be denied.

1.    __Section 17(a) of the Securities Act of 1933__

Section 17(a) of the 33 Act makes it "unlawful for any person in the offer or sale of any securities … directly or indirectly"

    1.     to employ any device, scheme, or artifice to defraud, or

    2.     to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    3.     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

*15 U.S.C. § 77q(a).*[2]

Section 17(a) "is a general prohibition against fraud in the offer or sale of securities," using the instruments of interstate commerce. *SEC v. Power*, 525 F.Supp.2d 415, 419 (S.D.N.Y. 2007). To allege a claim under Sections 17(a), the SEC must allege that the defendants: "(1) committed a deceptive or manipulative act, or made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device; (2) with scienter; (3) which affected the market for securities or was otherwise in connection with their offer, sale or purchase." *Id.*; *see also SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005). Scienter is a necessary element under Section

---

[2]     Although paragraph 102 of plaintiff's complaint refers to § 17(a)(1), (a)(2) and (a)(3), it is unclear whether plaintiff intends to proceed under all three (3) subsections or whether plaintiff has simply quoted the statute. In any case, the Supreme Court in *Janus Capital Group* eliminated liability under § 17(a) for all but the "makers" of untrue statements. *See infra*.

17(a)(1), but it is not required for liability under §§ 17(a)(2) and 17(a)(3). *Aaron v. SEC*, 446 U.S. 680, 697 (1980).

Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 fn. 2 (1976). Defendants with scienter "knew that the representations they made to investors were false or were reckless in disregarding a substantial risk that they were false." *SEC v. Falor*, 2010 WL 3385510 * 3 (N.D. Ill. 2010) (quoting *SEC v. Lyttle*, 538 F.3d 601, 603 (7th Cir. 2008)). The pleading standard for scienter is satisfied "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Power*, 525 F.Supp.2d at 421 (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168-169 (2nd Cir. 2000)).

Allegations of securities fraud are subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. To meet the particularity requirements of Rule 9(b), plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quotations omitted). In other words, averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Rule 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *SEC v. Daifotis*, 2011 WL 4714250 * 3 (N.D. Cal. 2011) (quotations and citations omitted).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level". *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009).

Plaintiff's second claim for relief is a "formulaic recitation" of § 17(a). The complaint's pleading failures are highlighted in Defendants' Second Affirmative Defense. Not a single "defrauded" investor (the "who") is identified. The time, place

and circumstances of the "fraud" (the "what, when, where, and how") is alleged in vague and conclusory terms, punctuated by the SEC's opinions about what is "meaningless" or "inadequate". *See, e.g., Complaint [Docket No. 1], ¶¶ 45, 53, 54.* Plaintiff generally alleges that the Defendants "misrepresented and omitted material information relating to … the safety or risk associated with the investments, the rates of return on the investments, and how AIC would use the proceeds", without stating what representations were actually made to "investors", when, where, or how any statements were false, misleading and/or actionable. *Complaint [Docket No. 1], ¶¶ 5, 28, 30, 33, 35, 36, 38, 45, 50, 53, 56.* Plaintiff admits that the promissory notes disclosed that the proceeds of note sales would be used for "business purposes only", *Complaint [Docket No. 1], ¶ 33*, which was a truthful statement. All of the investment funds were used for legitimate business purposes, including repaying maturing debt, paying legitimate salaries and operating expenses, etc. *Complaint [Docket No. 1], ¶ 32.* Although scienter is an element of at least part of Plaintiff's claim under § 17(a), *Aaron v. SEC*, 446 U.S. 680, 695-702 (1980), nowhere in the complaint are there any specific allegations showing that the Defendants, or any of them, acted with the intent to defraud anyone. Indeed, it is almost impossible to believe that Defendants acted with scienter, when:

- Skaltsounis and almost all the directors of AIC and their families and friends, numerous employees and consultants of AIC, and investors (who expressly deny any "offering fraud" or "Ponzi scheme") themselves purchased AIC debt and equity.

  Plaintiff fails to allege why Skaltsounis and the other directors and agents of AIC, including attorney Thomas A. Grant, Esquire, would defraud their mothers, children, sisters, husbands, wives, etcDefendant, Skaltsounis, and other directors.

11

- Plaintiff acknowledges that Skaltsounis "has been in the securities industry since 1976." *Complaint [Docket No. 1], ¶ 15.*

  Plaintiff fails to allege any facts that would demonstrate why Skaltsounis would put his thirty (30)+ year career and reputation on the line.

  Plaintiff also fails to allege why AIC board member Thomas A. Grant, Esquire – who is not accused of any wrongdoing – would jeopardize his law practice and lengthy career.

- AIC and its subsidiaries, respectively, were also audited by the Financial Industry Regulatory Authority ("FINRA") and the IRS. AIC and its subsidiaries also filed timely reports of its operations with the SEC.

  Plaintiff fails to allege any facts showing how AIC hid the "offering fraud" from the SEC and FINRA.

- **ALL** the offering materials – *promissory notes (ordinary and convertible), subscription agreements, subscriber questionnaires, executive summaries, confidential business plans, rollover and reinvestment letters* – the operative documents now deemed "fraudulent" by the SEC, were prepared by an international law firm, Troutman Sanders, LLP. Troutman Sanders also prepared all the corporate consents, resolutions, charter amendments, registrations, and Regulation D filings with the SEC necessary to facilitate the alleged "Ponzi scheme".

  Further, certified public accountants, Keiter, Stephens, Hurst, Gary & Shreaves, P.C., prepared tax returns and audited financial statements for Defendant AIC and the Relief Defendants over many years.

  Plaintiff fails to allege how AIC and Skaltsounis managed to evade the watchful eye of an international law firm and respected independent auditors.

  If Plaintiff is believed, Skaltsounis and Broker A fooled the entire AIC board of directors, who "simply ratified" Skaltsounis' "decisions" *Complaint [Docket No. 1], ¶ 59.*

Plaintiff has not and cannot allege motive or opportunity to defraud on the part of *any* Defendant. Plaintiff generally suggests that Skaltsounis knew the "precarious" financial condition of AIC and its subsidiaries, but plaintiff fails to describe the financial condition

or offer facts to support plaintiff's value judgment that the condition of AIC was ever "precarious". Scienter has not been alleged with any particularity.

Defendants' Second Affirmative Defense is proper. It should not be struck without a full and fair opportunity for the Defendants to put on evidence and to confront plaintiff about its conclusory accusations.

## C.   **Third Affirmative Defense – Second Through Eighth Sentences**

In its third claim for relief, plaintiff alleges that Defendants "violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder." *Complaint [Docket No. 1], ¶ 106*. In their Answer and Affirmative Defenses, Defendants deny plaintiff's claim and raise the following defenses:

> "Plaintiff's third claim for relief fails to state a claim upon which relief can be granted. Plaintiff fails to identify the "purchaser" of any AIC Investment upon whom Defendants allegedly practiced "fraud" or "deceit" in violation of § 10(b) of the Exchange Act and Rule 10b-5. Plaintiff fails to allege that CBS and Skaltsounis were the makers of any untrue statement. Plaintiff fails to allege the time, place, and circumstances of the "fraud" with any particularity. The complaint is riddled with the SEC's value judgments about what is "meaningful", mischaracterizations of written documents that are not attached to the complaint, and mere legal conclusions. The complaint fails to allege how or why the statements made by AIC were material to any of the unknown "investors". The complaint fails to allege scienter and/or how Defendants "knowingly or recklessly" defrauded any of the unknown "investors". Finally, the complaint fails to allege how any misrepresentation or omission proximately caused any alleged loss."

*Third Affirmative Defense [Docket No. 31, pp. 2-3 of 23]*.

Plaintiff moves to strike the second through eighth sentences of Defendants' Second Affirmative Defense. Plaintiff's motion should be denied.

In order to state a claim under section 10(b) of the Securities and Exchange Act of 1934 (the "34 Act")and Rule 10b–5 promulgated thereunder, the SEC must plead that the defendant "(1) made a material misrepresentation or a material omission as to which he

had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2nd Cir. 1999); *id. SEC v. Wolfson*, 539 F.3d 1249, 1256-1257 (10th Cir. 2008) (§ 10(b) and § 17(a) require "substantially similar proof" in order to find a defendant liable. The key difference between § 10(b) and § 17(a) "lies in the element of scienter, which the SEC must establish under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)," while "§ 10(b) always requires a showing of scienter.").

On June 13, 2011, the Supreme Court of the United States issued its decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011). Subsection (b) of Rule 10b–5, promulgated under Section 10(b) of the 34 Act, makes it unlawful for any person "[t]o *make* any untrue statement of a material fact" in connection with the purchase or sale of securities. *17 C.F.R. § 240 .10b–5(b)* (emphasis added). The Supreme Court in *Janus* announced a new test for interpreting the word "make" in Rule 10b–5. In upholding the dismissal of the plaintiff's Rule 10b–5 and Section 10(b) claim, the Court explained: "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it … One who prepares or publishes a statement on behalf of another is not its maker." *Id* . at 2302.

*Janus* applies to this case. As part of their defense to plaintiff's second and third claims for relief, Defendants point out that plaintiff fails to allege (indeed cannot allege) that CBS and Skaltsounis were the makers of any untrue statement. Under the new rule announced in *Janus*, CBS and Skaltsounis did not "make" any of the statements alleged to violate § 10(b) and Rule 10b-5. CBS and Skaltsounis did not have "ultimate control"

14

over the allegedly misleading statements. CBS was a subsidiary of AIC. Skaltsounis was one member of a seven (7) member board of directors. A true copy of AIC's annual reports filed with the Virginia State Corporation Commission between 2006 and 2009 are attached hereto collectively as _Exhibit "D"_. As the Supreme Court of the United States held in _Janus_: "Although JCM, like a speechwriter, may have assisted Janus Investment Fund with crafting what Janus Investment Fund said in the prospectuses, JCM itself did not 'make' those statements for purposes of Rule 10b–5." _Id._ at 2305.[3]

---

[3]     The Supreme Court in _Janus_ did not address liability under Section 17(a). Nonetheless, numerous courts have held that the elements of a claim under Section 17(a) are "essentially the same" as those for claims under Rule 10b–5. _See, e.g., SEC v. Kelly_, 2011 WL 4431161 * 5 (S.D.N.Y. 2011) (numerous citations omitted). As the Court of Appeals for the Second Circuit recognized long ago, the SEC's "only purpose" in adopting Rule 10b-5 was to make the same prohibitions contained in Section 17(a) – which applies in connection with the _"offer_ and sale" of a security – applicable to "purchasers" of securities as well. _Id._ (citing _Birnbaum v. Newport Steel Corp._, 193 F.2d 461, 463 (2nd Cir. 1952) (explaining how the SEC "simply copied" the language in Section 17(a) in creating Rule 10b–5)); _see also SEC v. Texas Gulf Sulphur_, 401 F,2d 833, 855 (2nd Cir. 1968)). In _SEC v. Kelly_, the United States District Court for the Southern District of New York dismissed the SEC's claim under § 17(a). The Court's analysis and holding are persuasive:

>   "Although the language of subsection (2) of Section 17(a) is not identical to that of subsection (b) of Rule 10b–5, both provisions have the same functional meaning with it comes to creating primary liability. To succeed on a misstatement claim under either Rule 10b–5(b) or Section 17(a)(2), the SEC must prove that the defendant _made_ materially false statements or omissions. _See, e.g., SEC v. McGinn, Smith & Co._, 752 F.Supp.2d 194, 212-213 (N.D.N.Y. 2010); _SEC v. Global Telecom Servs._, 325 F.Supp.2d 94, 111 (D. Conn. 2004); _SEC v. Espuelas_, 699 D.Supp.2d 655, 659-663 (S.D.N.Y. 2010). Because subsection (2) of Section 17(a) and subsection (b) of Rule 10b–5 are treated similarly, it would be inconsistent for _Janus_ to require that a defendant have made the misleading statement to be liable under subsection (b) of Rule10b–5, but not under subsection (2) of Section 17(a)."

_SEC v. Kelly_, 2011 WL 4431161 at * 5-6. Based on _Janus_, the Court should dismiss plaintiff's second and third claims for relief against CBS and Skaltsounis without more.

Defendants' Third Affirmative Defense states valid defenses which, if proven, will support a motion for summary judgment or motion to strike plaintiffs' evidence at trial. At this stage of the proceeding, *none* of Defendants' defenses should be struck, especially since plaintiff has failed to identify a single person to whom any Defendant "made" an untrue statement of any material fact.

## D.     Fourth Affirmative Defense – Second Sentence

In its fifth claim for relief, plaintiff alleges that Defendants AIC and CBS, in addition to having liability under Section 10(b) and Rule 10b-5, "also are liable as controlling persons under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)]." *Complaint [Docket No. 1], ¶ 111.* In their Answer and Affirmative Defenses, Defendants deny plaintiff's claim and raise the following defenses:

> "Plaintiff's fifth claim for relief fails to state a claim upon which relief can be granted. In addition to the fact that Plaintiff fails to allege a single primary securities law violation, AIC and CBS cannot be both the primary securities law violators and the control persons."

*Fourth Affirmative Defense [Docket No. 31, p. 3 of 23].*

Plaintiff moves to strike the second sentence of Defendants' Fourth Affirmative Defense. Plaintiff's motion should be denied.

Section 20(a) of the Securities and Exchange Act of 1934, *15 U.S.C. § 78t(a)*, extends liability to:

> [e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Case 3:11-cv-00176-TAV-HBG   Document 37   Filed 10/31/11   Page 16 of 24   PageID #: 469

Control "means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *17 C.F.R. 230.405*.

In order to establish a prima facie case of control person liability under Section 20(a) of the 34 Act, a plaintiff must show (1) a primary violation by the controlled person; (2) control of the primary violator by the defendant; and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2nd Cir. 2007). It is well settled that success on a control liability claim "is contingent upon the investors' ability to establish an 'underlying' violation of Section 10(b) and Rule 10b-5." *Konkol v. Diebold, Inc.*, 590 F.3d 390, 396 (6th Cir. 2009).

A corporation or other business entity acts only through its agents, and so a corporation's liability for securities fraud is determined by principles of agency law. In the securities context, two agency-law concepts are relevant: *respondeat superior* and apparent authority. *Makor Issues & Rights, Ltd. V. Tellabs Inc.*, 513 F.3d 702, 707-708 (7th Cir. 2008); *In re Atlantic Financial Mgmt., Inc.*, 784 F.2d 29, 31-32 (1st Cir. 1986); William H. Kuehnle, *Secondary Liability Under the Federal Securities Laws – Aidng ad Abetting, Conspiracy, Controlling Person, and Agency: Common Law Principles and the Statutory Scheme*, 14 J. Corp. L. 313, 367-370 (1988). Under respondeat superior, a "master" (employer) is liable for the torts of a "servant" (employee) done while the servant is acting within the scope of employment. *Kuehnle*, at 368. Under the concept of apparent authority, a principal is liable when an agent acting with apparent authority makes a statement on which another relies. *Kuenhnle* at 369. The agent has apparent

authority when, from the perspective of third parties, it appears that the corporation has vested the agent with authority to make the statement, whether or not the corporation actually has done so. Unlike respondeat-superior liability, a principal may be held liable for acts done by an agent with apparent authority even if the agent acts entirely for his own purposes and not for the purpose of serving the principal. *Am. Society of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982); *Atlantic Financial*, 784 F.2d at 32; *Wise v. Wachovia Secs., LLC*, 450 F.3d 265, 269 (7th Cir. 2006).

Although AIC and CBS' primary liability for securities fraud is determined by agency law principles, AIC's secondary liability as a "control person" is not decided based upon the same principles of law. *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 93, 102 (2nd Cir. 2001) (mere allegations of a corporate affiliation between defendants are insufficient to indicate control by one over another – affirming the dismissal of a complaint against a parent company of a primary violator); *Public Employee's Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*, 714 F.Supp.2d 475, 485 (S.D.N.Y. 2010) (control person claim was not pleaded where a complaint only alleged that individual defendants were officers or directors of a primary violator).

Plaintiff alleges that Defendants AIC and CBS are both primary violators and control persons. Even assuming that that plaintiff has adequately stated a claim against AIC and CBS under section 10(b) and Rule 10b–5 – which is denied – the corporations (AIC and CBS) cannot be both "primary violators" and "control persons". Although the Court of Appeals for the Sixth Circuit has not squarely decided the issue, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) strongly suggests that the Court of Appeals

Case 3:11-cv-00176-TAV-HBG   Document 37   Filed 10/31/11   Page 18 of 24   PageID #: 471

would decide that primary and secondary liability cannot co-exist in the same defendant.

In *PR Diamonds*, the Court of Appeals ruled as follows:

> "Without deciding the question, we note that some authority suggests that a plaintiff may not be able simultaneously to assert both Section 10(b) and Rule 10b-5 claims and Section 20(a) claims against the same defendant. "Arguably, a § 20(a) claim cannot be asserted against a defendant who is also charged with primary violation of § 10(b) and Rule 10b-5; that is, secondary liability under § 20(a) is an alternative, not a supplement, to primary liability under § 10(b) and Rule 10b-5." *Lemmer v. Nu-Kote Holding, Inc.*, 2001 WL 1112577 * 12 (N.D. Tex 2001), citing *Kalnit v. Eichler*, 85 F.Supp.2d 232, 246 (S.D.N.Y. 1999) (suggesting that plaintiffs could not allege primary liability against the directors of a corporation and at the same time allege control person liability against the directors). *See also In re Capstead Mortg. Corp. Secs. Litig.*, 258 F.Supp.2d 533, 566 (N.D. Tex 2003) (quoting the aforementioned passage from Lemmer); *183 A.L.R. Fed. 141*, 2003 WL 139425 § 2[b] (2003) ("It is a frequent practice to plead in the alternative that a defendant is both a primary violator and a controlling person of primary violators, although, as some courts have noted, one cannot simultaneously be both.")."

Even if plaintiff can assert simultaneous claims against AIC and CBS under § 10(b) *and* 20(a), plaintiff's claim that a corporation controls its officers and directors is contrary to fundamental principles of corporations law.  In Virginia, AIC's domicile and principal place of business, all corporate powers "shall be exercised by or under the authority of, and the business and affairs of the corporation managed under direction of, its board of directors." *§ 13.1-673(B) of the Virginia Code (1950), as amended*.  It is the *directors* who control the business and affairs of the corporation, *not* the other way around.  Under Virginia law, corporations, AIC and CBS, are not and cannot be control persons and section 20(a) does not apply. *See Kanit v. Eichler*, 85 F.Supp.2d 232, 246 (S.D.N.Y. 1999).

Even if AIC and CBS could control their respective officers and directors, the only facts that could possibly support plaintiff's theory that AIC "controlled" Skaltsounis is that Skaltsounis was an officer, director, shareholder and employee of AIC. *Complaint*

*[Docket No. 1], ¶¶ 1, 13, 15, 22.* Similarly, the only facts that could support plaintiff's claim that CBS "controlled" defendants, Guyette and Graves, is that Guyette and Graves were "associated with" CBS. *Id., ¶¶ 2, 16, 17.*

Plaintiff admits that Skaltsounis was "a" member of AIC's board of directors, along with others, including Broker A. *Complaint [Docket 1], ¶ 21.* Plaintiff fails to allege how AIC and/or CBS controlled Skaltsounis. Although the facts alleged would support an inference that Skaltsounis, in his position as founder, president, and chief operating officer, controlled AIC, *no facts* are alleged concerning AIC's control of *Skaltsounis.* The same is true of CBS. Other than a general statement that Skaltsounis, Guyette, Graves and Broker A were "acting in the course and scope of their respective employment when they committed the violations", *Complaint [Docket No. 1], ¶ 22,* plaintiff fails to allege facts to show *how* or in what manner CBS controlled any Defendant. *See Sanders Confectionary Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 485-486 (6th Cir. 1992) (dismissing § 20(a) claim where plaintiff failed to plead sufficient "acts of control").

Defendants' Fourth Affirmative Defense is proper. It should not be stricken.

**E.      Fifth Affirmative Defense**

In its sixth claim for relief, plaintiff alleges that Relief Defendants "each received proceeds of the fraud described herein, over which they have no legitimate claim." *Complaint [Docket No. 1], ¶ 117.* In their Answer and Affirmative Defenses, Relief Defendants deny plaintiff's claim and raise the following defenses:

> "Plaintiff's sixth claim for relief fails to state a claim upon which relief can be granted. Plaintiffs fails to allege any facts to support its claim that the Relief Defendants received any "ill-gotten" gains. Further, the facts alleged the funds."

*Fifth Affirmative Defense [Docket No. 31, pp. 3-5 of 23].*

Plaintiff moves to strike the substance of Defendants' Fifth Affirmative Defense. Plaintiff's motion should be denied.

Defendants' Fifth Affirmative Defense sets forth the controlling principles of law and contains a short and plan statement of the reasons why plaintiff's claim against the Relief Defendants fails as a matter of law. The legal defenses raised by the Relief Defendants are recognized. The facts will be proven by the evidence.

**F.     Sixth, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Defenses**

Defendants and Relief Defendants remaining defenses[4] assert defenses of legality, *e.g. Sixth Affirmative Defense*, waiver, estoppel, etc.

Certain defenses, such as the Eighth Affirmative Defense (the *Janus* defense), Ninth Affirmative Defense (lack of scienter and good faith), may be duplicative, having be expressly raised in other parts of Defendants' and Relief Defendants' Answer and Affirmative Defenses, but this does not provide grounds to strike the defenses. Good faith, for instance, is relevant to the defense of any § 20(a) claim. *15 U.S.C. § 78t(a).* The defense should not stricken.

As to the specific defense of ratification (part of the Eleventh Affirmative Defense), AIC's subsidiaries regularly reported to FINRA and the SEC during the "relevant period" and underwent many routine audits and examinations of their books and records. CBS' Focus Reports (Form 17a-5) filed with the SEC pursuant to Rule 17, for instance, disclosed the capital being contributed to CBS and the ownership equity of AIC. Neither FINRA nor the SEC *ever* reported any irregularities or problems with

---

[4]     Plaintiff does not move to strike Defendants and Relief Defendants' Seventh Affirmative Defense – the advice of counsel defense.

AIC's capital raises or any issues with the subsidiaries' quarterly Focus Reports. Had the SEC and/or FINRA ever questioned the manner in which AIC went about raising capital, the adequacy of the disclosure materials, etc., AIC and its legal counsel, Troutman Sanders, would have responded appropriately and immediately. While the SEC "cannot be held to have ratified illegal acts", it is fundamentally unfair and unjust for the SEC to examine and approve the operations of a securities broker-dealer for *years*, to declare the broker to be in compliance with federal securities law, and, years after-the-fact, to declare that the broker (CBS) committed securities fraud.[5]

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Defendants and Relief Defendants respectfully request the Court to deny plaintiff's cross-motion to strike.


DATED:        October 31, 2011


Signature of Counsel on Next Page

---

[5] In light of the allegations made with regard to Broker A, Carol J. LaRue, who is deceased, Defendants and Relief Defendants raised the Dead Man's Statute as a defense and to preserve hearsay and all other proper objections to evidence that violates the Dead Man's Statute and/or other applicable rules of evidence. Defendants and Relief Defendants do not object to Plaintiff's request to strike the Thirteenth Affirmative Defense, so long as striking the defense does not impair the ability to object at any future stage of these proceedings.

AIC, INC.
COMMUNITY BANKERS SECURITIES, LLC
NICHOLAS D. SKALTSOUNSIS
ALLIED BEACON PARTNERS, INC.
    (f/k/a Waterford Investor Services, Inc.)
ADVENT SECURITIES, INC.
CBS ADVISORS, LLC


     */s/Garrett P. Swartwood*

By:_____

     Garrett P. Swartwood (BPR # 21803)
     LONG, RAGSDALE & WATERS, P.C.
     1111 Northshore Drive, S-700
     Knoxville, Tennessee 37919
     Telephone:    (865) 584-4040
     Facsimile:    (865) 584-6084
     Email:     **gswartwood@lrwlaw.com**

     *Counsel for Defendants and Relief Defendants*

     Steven S. Biss (VSB # 32972)
     300 West Main Street, Suite 102
     Charlottesville, Virginia 22903
     Telephone:    (804) 501-8272
     Facsimile:    (202) 318-4098
     Email:     **stevenbiss@earthlink.net**

     Elliott P. Park (VSB # 39163)
     PARK AND COMPANY, P.C.
     1011 East Main Street
     Suite 300
     Richmond, Virginia 23219
     Telephone:    (804) 648-7565
     Facsimile:    (804) 648-7567
     Email:     **epp@parkandcompany.com**

     *Co-Counsel for Defendants and Relief Defendants*
         *(Application for Admission Pro Hac Vice*
         *to be Filed)*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2011, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the plaintiff, Michael J. Rinaldi, Esquire, Securities and Exchange Commission, Philadelphia Regional Office, 701 Market Street, Suite 2000, Philadelphia, Pa 19106, RinaldiM@sec.gov.

By: *s/Garrett P. Swartwood*
_____

Garrett P. Swartwood (BPR # 21803)
LONG, RAGSDALE & WATERS, P.C.
1111 Northshore Drive, S-700
Knoxville, Tennessee 37919
Telephone:     (865) 584-4040
Facsimile:     (865) 584-6084
Email:         **gswartwood@lrwlaw.com**

*Counsel for Defendants and Relief Defendants*