IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| Plaintiff, | : | |
| v. | : | No. 3:11-cv-00176 |
| AIC, INC. et al., | : | |
| Defendants, | : | |
| and | : | |
| ALLIED BEACON PARTNERS, INC. (f/k/a Waterford Investor Services, Inc.) et al., | : | |
| Relief Defendants. | : | |

### OPENING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE

Plaintiff Securities and Exchange Commission (the "Commission"), by and through its undersigned counsel, hereby submits this opening brief in support of its motion to strike certain affirmative defenses set forth in the AIC Defendants' answer to the Commission's amended complaint.[1]

I. **INTRODUCTION**

The AIC Defendants' answer to the Commission's amended complaint contains numerous affirmative defenses that are legally insufficient and, as such, should be stricken pursuant to Federal Rule of Civil Procedure 12(f). Indeed, a number of these affirmative

---

[1] The term "AIC Defendants" collectively refers to defendants AIC, Inc. ("AIC"), Community Bankers Securities, LLC ("CB Securities"), and Nicholas D. Skaltsounis ("Skaltsounis") and relief defendants Allied Beacon Partners, Inc. (f/k/a Waterford Investor Services, Inc.) ("Allied Beacon Partners" or "Waterford"), Advent Securities, Inc. ("Advent"), and Allied Beacon Wealth Management, LLC (f/k/a CBS Advisors, LLC) ("ABWM" or "CBS Advisors").

defenses were previously asserted by the AIC Defendants in their answer to the Commission's original complaint and stricken by the Court based on a stipulation by the parties. In its amended complaint, the Commission made only minimal changes to the factual allegations set forth in its original complaint—the Commission amended its complaint principally for the purposes of reflecting a name change by one of the relief defendants and of adding an aiding and abetting claim against defendant Skaltsounis. Put simply, if it could be agreed that these defenses should be stricken before, then there can be no basis for their assertion now.

In addition, the AIC Defendants have asserted a new affirmative defense—"unclean hands"—which they did not assert in response to the original complaint. But, like the AIC Defendants' previously stricken defenses, this new defense fails, too. As a matter of law, an unclean hands affirmative defense is generally unavailable in an action brought by a federal government agency to enforce a congressional mandate in the public interest. Here, the AIC Defendants' bald assertion of "unclean hands" is legally insufficient.

There is simply no point in allowing the AIC Defendants to pursue affirmative defenses that cannot succeed. Litigating such matters will only result in unnecessary discovery disputes and the concomitant wasted time and resources for the Court and the parties. The Commission respectfully requests that these affirmative defenses be stricken.

## II.  FACTUAL BACKGROUND

This is a civil enforcement action by the Commission against defendants AIC, CB Securities, Skaltsounis, John B. Guyette ("Guyette"), and John R. Graves ("Graves") and relief defendants Allied Beacon Partners, Advent, and ABWM.

As alleged in the amended complaint, Skaltsounis, during the relevant period, President and Chief Executive Officer of AIC, CB Securities, Advent, and ABWM and Chairman of the

2

Case 3:11-cv-00176-TAV-HBG   Document 72   Filed 12/03/12   Page 2 of 13   PageID #: 713

board of directors of Allied Beacon Partners (Am. Compl. ¶ 15), devised and orchestrated an offering fraud and Ponzi scheme. The scheme operated "through the sale of millions of dollars of AIC promissory notes and stock through misleading and false representations and disclosures that masked the underlying financial hardship of AIC and its inability to pay promised returns without using new investor money." (Id. ¶ 1.) In short, the defendants falsely marketed investments in AIC as "safe" and "secure," while making other material misrepresentations about AIC's business and omitting disclosures regarding the risks associated with investing, including that AIC and its subsidiaries had never been profitable, that AIC had almost no revenue from business operations, and that AIC's ability to pay the promised returns to investors depended on its ability to attract new investors. (Id. ¶¶ 30, 50–96.)

Ultimately, and as is alleged in the amended complaint, AIC raised over $7.7 million from at least 74 investors, in at least 14 states—including a significant number of investors from the State of Tennessee, who were serviced through a CB Securities office in Maryville, Tennessee. (Id. ¶¶ 29, 72.) Once investors were brought into the Ponzi scheme, the defendants' misrepresentations and omissions did not cease. In order to prevent the collapse of the scheme, defendants AIC, CB Securities, Skaltsounis, and Guyette (as well as a now-deceased, Tennessee-based AIC board member and CB Securities registered representative referred to in the amended complaint as "Broker A") induced investors to "rollover," "renew," or "reinvest" their AIC investments, including through the use of "rollover" letters. (Id. ¶ 36.) These letters fraudulently stated that AIC could pay the principal and accumulated interest on AIC promissory notes within ten days (AIC, in fact, lacked the ability to repay the notes) and omitted information material to the investors' reinvestment decisions, such as financial reports or any written disclosure

3

regarding AIC's worsening financial condition, its inability to repay the notes without new investor money coming in, and the risks associated with renewing a note. (E.g., id. ¶¶ 36–40.)

By late 2009—when the scheme collapsed—AIC had approximately $4 million in note obligations on its books as a result of issuing new notes and rolling over old ones, and it was unable to meet these obligations. (Id. ¶¶ 6, 41.) AIC had also raised over $2.3 million through the sale of AIC common and preferred stock. (Id. ¶ 42.) Investors—including many unsophisticated and elderly investors—lost millions of dollars in the defendants' scheme. (E.g., id. ¶ 6.) As to where the money went, Skaltsounis paid himself approximately a million dollars in a less than four-year period and caused over $3.6 million to be transferred to AIC's subsidiaries, namely defendant CB Securities and relief defendants Allied Beacon Partners (then known as Waterford), Advent, and ABWM (then known as CBS Advisors), all of which he effectively controlled. (Id. ¶¶ 32, 59.)

## III. PROCEDURAL HISTORY

On April 15, 2011, the Commission filed this action, seeking injunctive relief, civil penalties, and orders of disgorgement. In response, the AIC Defendants filed motions for a more definite statement and to transfer venue, both of which were denied by the Court. (Doc. 30.) The AIC Defendants then answered the original complaint and, in their answer, asserted a number of affirmative defenses. (Doc. 31.) The Commission responded by filing a motion to strike certain of the affirmative defenses (Doc. 33), and, subsequently, the parties reached a stipulation that certain affirmative defenses should be stricken from the AIC Defendants' answer (Doc. 39). On November 21, 2011, the Court entered the stipulated order, which, inter alia, struck several of the AIC Defendants' affirmative defenses. (Doc. 40.)

Following the parties' Rule 26(f) conference on January 5, 2012, discovery commenced. On September 28, 2012, the Commission filed a motion for leave to amend its complaint (Doc. 60), which was granted on October 25 (Doc. 64). The Commission filed its amended complaint later that day. (Doc. 65.[2]) The amended complaint reflected minimal changes in the factual allegations as set forth in the original complaint, its principal purposes being the changing of the entity name for one the relief defendants (to reflect a corporate name change) and the adding of an aiding and abetting claim against defendant Skaltsounis.

The AIC Defendants answered the amended complaint on November 8, 2012 (Doc. 66) and asserted in their answer a number of affirmative defenses, many of which are legally insufficient and several of which were stricken from the prior answer. Presently before the Court is the Commission's motion to strike certain of the AIC Defendants' affirmative defenses, including ones that the Court has already ordered stricken when they were asserted in response to the original complaint.

## IV. ARGUMENT

Federal Rule of Civil Procedure 12(f) authorizes the striking of an "insufficient defense." The Commission recognizes that the striking of affirmative defenses is relief seldomly

---

[2] In its amended complaint, the Commission asserts claims under Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Because the defendants, in addition to violating the aforementioned antifraud provisions of the federal securities laws, also sold securities in violation of the Securities Act's registration requirements, claims are brought under Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c). The Commission also seeks the imposition of controlling person liability against defendants AIC and CB Securities under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as well as aiding and abetting liability against defendant Skaltsounis under Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e). In addition, because relief defendants Allied Beacon Partners, Advent, and ABWM were recipients of the ill-gotten proceeds of defendants' fraud, orders of disgorgement are sought against them. Claims under Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) & 80b-6(2), are also asserted against defendant Graves.

5

granted. But here the Court is presented with affirmative defenses that are clearly legally insufficient, including ones the Court has stricken before. Striking inappropriate affirmative defenses—particularly ones that cannot succeed as a matter of law—will streamline this litigation and eliminate issues that have no bearing on the present dispute, thus conserving the resources of the Court and of the litigants and eliminating the potential for prejudice.[3] In particular, the Commission requests that parts of first, second, third, fourth, fifth, sixth, ninth, and tenth affirmative defenses be stricken.

### A.     *The Legal Standard.*

Federal Rule of Civil Procedure 12(f) states that a court may "strike from a pleading an insufficient defense."[4] "A defense is insufficient if as a matter of law, the defense cannot succeed under any circumstances." Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036, 1047 (W.D. Tenn. 2011) (citations and internal quotation marks omitted). "A motion to strike [affirmative defenses] may be granted if it aids in eliminating spurious issues before trial, thereby streamlining the litigation." Id. (citation and internal quotation marks omitted). However, it is not necessary for the Commission to identify specific instances in which the objectionable affirmative defenses would cause it to unnecessarily expend time or money. See SEC v. Nothern, 400 F. Supp. 2d 362, 367 (D. Mass. 2005) (striking an affirmative defense even where "[t]he SEC has done little to point out specific instances where [defendant's] estoppel defense would actually cause it to expend inordinate amounts of time and money" and noting

---

[3] The Commission does not concede that the AIC Defendants' other affirmative defenses (i.e., those not subject to this motion to strike) have any validity and will address them at an appropriate time.

[4] "A motion to strike under Federal Rule 12(f) . . . is the primary procedure for objecting to an insufficient defense." 5C Charles Alan Wright et al., Federal Practice and Procedure § 1380 (3d ed.). Rule 12(f) also permits the striking of "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.

that "the fact remains that [defendant's] affirmative defense is ill-begotten and appropriately stricken").

> **B.** *The First Sentence of the Ninth Affirmative Defense Is Nothing More Than a General Denial of Fault and Has Previously Been Stricken.*

In the first sentence of their Ninth Affirmative Defense, the AIC Defendants state that "Defendants had no motive to lie to any investor and did not act with scienter or any intent to mislead anyone." This "affirmative defense" is not an affirmative defense at all but, rather, a general denial of fault and should be stricken on that basis. See, e.g., FTC v. Hope Now Modifications, LLC, Civil No. 09-1204, 2010 WL 1463008, at *1 (D.N.J. Apr. 12, 2010) ("The Court will strike the first three affirmative defenses as redundant, as they are general denials of fault, and not true affirmative defenses.").

But more to the point, the AIC Defendants already stipulated that the same exact language should be stricken from their answer to the original complaint, and the Court entered an order to that effect. (Doc. 40.) The same result is warranted here.

> **C.** *The AIC Defendants' Ratification Defense Has Been Previously Stricken and Should Be Stricken Again.*

As part of their First Affirmative Defense, the AIC Defendants assert a ratification defense. This defense was previously stricken. (Doc. 40.) Under the law, the Commission cannot be held to have ratified illegal acts. See, e.g., SEC v. Gulf & W. Indus., Inc., 502 F. Supp. 343, 348 (D.D.C. 1980) (striking as legally insufficient the defense that the "SEC approved, ratified, or participated in the promulgation of the accounting principles whose application is challenged in certain allegations in the complaint."). It follows that the AIC Defendants' ratification defense fails as a matter of law.

### D. Parts of the First Through Sixth Affirmative Defenses Are Nothing More Than General Denials and Should Thus Be Stricken.

In the first through sixth affirmative defenses, the AIC Defendants begin with an assertion that the Commission has failed to state a claim upon which relief can be granted and then go on, for instance, to deny that they sold securities in violation of the various securities laws cited in the amended complaint or to assert that the Commission is not entitled to the relief it seeks. Putting aside that the Commission disagrees with the AIC Defendants' description of the various legal standards set forth in these affirmative defenses, these types of affirmative defenses are nothing more than general denials and can be stricken on that basis. See Hope Now Modifications, LLC, 2010 WL 1463008, at *1.

Significantly, similar legal conclusions and arguments were previously stricken from the AIC Defendants' first through fifth affirmative defenses to the original complaint (Doc. 40), each of which likewise began with the assertion that the Commission failed to state a claim upon which relief can be granted. The same result is warranted here. The AIC Defendants are certainly entitled to maintain a defense that the Commission's amended complaint fails to state a claim, but there is no point in loading up the pleadings with argument that (at best) is redundant or (at worst) constitutes incorrect statements about the law.

Accordingly, the fourth through sixth sentences of the First Affirmative Defense, the second through fourth sentences of the Second Affirmative Defense, the second and third sentences of the Third Affirmative Defense, the second sentence of the Fourth Affirmative Defense, the second and third sentences of the Fifth Affirmative Defense, and the second, third, sixth, and seventh sentences of the Sixth Affirmative Defense should be stricken.

### E. The AIC Defendants' Unclean Hands Defense Should Be Stricken.

The AIC Defendants have asserted an unclean hands defense against the Commission as part of their first, second, third, sixth, and tenth affirmative defenses.[5] This defense should be stricken. "Where the defense[] of unclean hands . . . [has] been used against the government when it is asserting public rights, courts have repeatedly held that equitable principles will not be applied to thwart public policy or the purpose of federal laws." Kelley v. Thomas Solvent Co., 714 F. Supp. 1439, 1451–52 (W.D. Mich. 1989) (granting the government's motion to strike affirmative defense of unclean hands); see also Gulf & W. Indus., Inc., 502 F. Supp. at 348 ("[T]he doctrine of unclean hands is clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest."; striking unclean hands defense in SEC civil enforcement action). Here, the Commission is prosecuting a civil enforcement action pursuant to its congressional mandate. It is in circumstances such as these that courts have stricken an unclean hands affirmative defense.

Moreover, even those courts that have entertained the possibility that an unclean hands affirmative defense might have some viability when asserted against the government have permitted it only in limited circumstances where "the agency's misconduct [was] egregious and the resulting prejudice to the defendant r[o]se to a constitutional level." SEC v. KPMG LLP, No. 03 Civ. 671(DLC), 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003) (citations and internal quotation marks omitted). Thus, in cases brought by the Commission, courts have stricken the affirmative defense of unclean hands when the defendant failed to plead egregious misconduct and resulting prejudice rising to a "constitutional level." See, e.g., id. ("The doctrine of unclean hands is likewise inapplicable since the SEC was acting to further its congressional

---

[5] The AIC Defendants did not assert this defense in response to the original complaint.

mandate to investigate potential violations of the securities laws, and defendants do not—and could not—contend that the SEC's failure specifically to identify a violation of GAAP constituted egregious misconduct or prejudice that rose to a 'constitutional level.'").

To decide the present motion to strike, the Court need not resolve the question of whether an unclean hands affirmative defense is absolutely barred in civil enforcement actions brought by the Commission or simply unavailable in all but strictly limited circumstances. Here, the AIC Defendants have only baldly asserted an unclean hands defense, with <u>no supporting factual allegations</u>, let alone "concrete and specific allegations" of egregious misconduct and resulting prejudice rising to a "constitutional level." SEC v. Rosenfeld, No. 97 Civ. 1467 (RPP), 1997 WL 400131, at *2 (S.D.N.Y. July 16, 1997). Allowing the AIC Defendants' defense to stand would not only run counter to authority holding that the defense is generally unavailable in cases brought by the government, see KPMG LLP, 2003 WL 21976733, at *3, but it would also invite unnecessary discovery disputes and associated wasted time and resources for the Court and the parties, see Rosenfeld, 1997 WL 400131, at *2. It is in cases such as this that relief under Rule 12(f) is most appropriate: the defense as pled is plainly insufficient, and its striking would streamline the litigation by eliminating the need for inquiry in support of a defense that cannot succeed.

### F. *The AIC Defendants' Incorrect Characterization of the Commission's Civil Enforcement Action Should Be Stricken.*

The second through fifth affirmative defenses each has a final sentence that reads:

> Finally, because Plaintiff's action in this case seeks to vindicate the
> private interests on [sic] a few individual AIC Investors and
> because Plaintiff's suit was not commenced within five years of
> the date when the claim first accrued, all or part of the
> government's claim is barred by applicable statutes of limitations.

The final sentence of the First Affirmative Defense contains a substantively similar statement, with the only difference being that the word "first" is inserted between the words "government's" and "claim."

The problem with this defense is two-fold. First, it is wrong as a matter of law. This case is not a private damages action brought on behalf of the AIC Defendants' victims. It is a civil enforcement action brought pursuant to express statutory authority. See 15 U.S.C. §§ 77t(b), 77t(d), & 78u(d). Second, the verbiage is redundant. The AIC Defendants' Eleventh Affirmative Defense asserts "the applicable statutes of limitation." There is no reason to repeat the defense over and over again, let alone with incorrect allegations that the Commission staff is simply acting to further "private interests." See Fed. R. Civ. P. 12(f) (permitting the striking of "an insufficient defense" or "any redundant . . . matter").

Contrary to what the AIC Defendants say, the Commission's claims are not barred by any statute of limitations. And the Commission will address this affirmative defense at the appropriate time. But when the AIC Defendants go beyond a more-or-less standard assertion of the defense to include legally wrong and impertinent statements about at whose behest the Commission is operating, striking the defense is the appropriate remedy.

## V. CONCLUSION

For all of the foregoing reasons, the Commission's Motion to Strike should be granted.

Respectfully submitted,

Dated: December 3, 2012.

s/ Michael J. Rinaldi
G. Jeffrey Boujoukos
Michael J. Rinaldi
Scott A. Thompson

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, Pa. 19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
RinaldiM@sec.gov

12

## CERTIFICATE OF SERVICE

I hereby certify, this third day of December, 2012, that I served a true and correct copy of the foregoing Opening Brief in Support of Plaintiff's Motion to Strike, by the means indicated, upon the following:

Heather G. Anderson, Esq.
Reeves, Herbert & Anderson, P.A.
Tyson Place, Suite 130
2607 Kingston Pike
Knoxville, Tenn. 37919
(by the Court's electronic filing system)

Steven S. Biss, Esq.
300 W. Main St., Ste. 102
Charlottesville, Va. 22903
(by the Court's electronic filing system)

Mr. John B. Guyette
2559 53rd Avenue
Greeley, Colo. 80634
(by e-mail and first-class mail, postage prepaid)

Mr. John R. Graves
4300 W. Francisco Road, Unit 11
Pensacola, Fla. 32504
(by e-mail and first-class mail, postage prepaid)

s/ Michael J. Rinaldi
Michael J. Rinaldi