IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : No. 3:11-cv-00176 |
| AIC, INC. et al., | : |
| Defendants, | : |
| and | : |
| ALLIED BEACON PARTNERS, INC. (f/k/a Waterford Investor Services, Inc.) et al., | : |
| Relief Defendants. | : |

**OPENING BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Plaintiff Securities and Exchange Commission (the "Commission"), by and through its undersigned counsel, hereby submits this opening brief in support of its motion to compel discovery.

I. **INTRODUCTION**

This is a civil enforcement action against the AIC Defendants[1] and others for violations of the federal securities laws. Defendants AIC, CB Securities, and Skaltsounis, along with pro se defendants John B. Guyette ("Guyette") and John R. Graves ("Graves"), defrauded dozens of

---

[1] In this opening brief, the term "AIC Defendants" collectively refers to defendants AIC, Inc. ("AIC"), Community Bankers Securities, LLC ("CB Securities"), and Nicholas D. Skaltsounis ("Skaltsounis") and relief defendants Allied Beacon Partners, Inc. (f/k/a Waterford Investor Services, Inc.) ("Allied Beacon Partners" or "Waterford"), Advent Securities, Inc. ("Advent"), and Allied Beacon Wealth Management, LLC (f/k/a CBS Advisors, LLC) ("ABWM" or "CBS Advisors").

investors in a multi-million-dollar offering fraud and Ponzi scheme that spanned at least fourteen states, including Tennessee. The scheme operated through the fraudulent sale of AIC promissory notes and stock. After taking in money from investors, millions of dollars were transferred to defendants Skaltsounis, CB Securities, and Guyette and to relief defendants (and AIC subsidiaries) Waterford, Advent, and CBS Advisors. Through this civil enforcement action, the Commission seeks, <u>inter alia</u>, injunctive relief and civil penalties against the defendants, as well as orders of disgorgement with respect to the proceeds of the fraud.

The Commission staff has been diligent in prosecuting this action, propounding interrogatories and document requests on the defendants and relief defendants, taking depositions, and serving subpoenas on third parties. Despite its diligence, the Commission staff has not received the discovery it needs and to which it is entitled, due to the AIC Defendants' failure to comply with their discovery obligations. The Commission staff has attempted to confer with counsel for the AIC Defendants regarding these issues and ultimately requested a discovery conference with the Honorable H. Bruce Guyton. Following the discovery conference, Magistrate Judge Guyton issued an order, which, <u>inter alia</u>, required the parties to confer further. Although the Commission staff made several requests for such a conference with counsel, it was met with refusal by the AIC Defendants' counsel. Thus—despite the Commission staff's best efforts—the parties' discovery dispute remains largely unresolved, and the filing of this motion to compel discovery became necessary.

As things currently stand, the AIC Defendants have not turned over copies of audio recordings of AIC's corporate meetings. They were called for in the Commission's January 6, 2012, document requests, as well as in the Commission's earlier investigative subpoenas. At first, the AIC Defendants said nothing about the audio recordings. The Commission staff only

2

Case 3:11-cv-00176-TAV-HBG   Document 77   Filed 01/04/13   Page 2 of 18   PageID #: 807

learned of the recordings when defendant Skaltsounis's former executive assistant (Della Tabar) disclosed their existence during her October 26, 2012, deposition. Ms. Tabar also testified to the existence of other documents that were called for in discovery and in investigative subpoenas but were never produced. At and following Ms. Tabar's deposition, the Commission's counsel renewed the request for the documents, but the inquiries were generally met with silence by the AIC Defendants.

Then, in advance of the discovery conference with Magistrate Judge Guyton, the AIC Defendants represented to the Court that the audio recordings did not exist. But, the next day, at his deposition, defendant (and founder and President of defendant AIC) Skaltsounis contradicted this position and testified to the existence of the tapes. Now, the AIC Defendants' counsel says the audio tapes and other documents identified by Ms. Tabar may exist and are "somewhere in the 200 boxes of documents" piled in various rooms within in a Richmond, Virginia, apartment building. (Ex. A.) He has further instructed the Commission's counsel to look through the boxes in search of his clients' missing documents. As these documents are not "kept in the usual course of business," the procedure suggested by the AIC Defendants does not comport with the Rules. The AIC Defendants should review these documents and produce what is responsive to the Commission's requests.

As to deposition scheduling, the Commission staff has been met with a lack of cooperation by the AIC Defendants' counsel. The problem is that the AIC Defendants have identified (in their initial disclosures and discovery responses) dozens of individuals purportedly with knowledge of relevant facts that they may use to support their defenses, but the AIC Defendants' counsel has claimed that he is unavailable for depositions on all but a few days. Following the discovery conference with Magistrate Judge Guyton, the AIC Defendants' counsel

promised to provide additional deposition dates by December 9, 2012. That day came and went with no word on additional dates. Then, the AIC Defendants' counsel said that such dates would be provided by January 3, 2013. And, again, the date came and went with no word from the AIC Defendants' counsel. Given the past promises and failures to provide dates for depositions, the Commission's counsel respectfully requests that the matter of deposition scheduling be referred to Magistrate Judge Guyton, for His Honor's assistance in facilitating such scheduling.

In addition, counsel for the AIC Defendants has acknowledged that his clients have an obligation to supplement their deficient document request responses and to produce their financial records (which still have not been produced in full). Thus, the proposed form of order being submitted to chambers in connection with this motion, would, if entered, require the AIC Defendants to serve full and complete document request responses and to produce all financial records by January 6, 2013, the date by which the AIC Defendants' counsel said he would be able to supplement his clients' deficient responses.

## II. FACTUAL BACKGROUND

As alleged in the amended complaint, Skaltsounis, during the relevant period President and Chief Executive Officer of AIC, CB Securities, Advent, and CBS Advisors and Chairman of the board of directors of Waterford (Am. Compl. ¶ 15), devised and orchestrated an offering fraud and Ponzi scheme. The scheme operated "through the sale of millions of dollars of AIC promissory notes and stock through misleading and false representations and disclosures that masked the underlying financial hardship of AIC and its inability to pay promised returns without using new investor money." (Id. ¶ 1.) In short, the defendants falsely marketed investments in AIC as "safe" and "secure," while making other material misrepresentations about AIC's business and omitting disclosures regarding the risks associated with investing,

including that AIC and its subsidiaries had never been profitable, that AIC had almost no revenue from business operations, and that AIC's ability to pay the promised returns to investors depended on its ability to attract new investors. (Id. ¶¶ 30, 50–96.)

Ultimately, and as is alleged in the amended complaint, AIC raised over $7.7 million from at least 74 investors, in at least 14 states—including a significant number of investors from the State of Tennessee, who were serviced through a CB Securities office in Maryville, Tennessee. (Id. ¶¶ 29, 72.) By late 2009—when the scheme collapsed—AIC had approximately $4 million in note obligations on its books as a result of issuing new notes and rolling over old ones, and it was unable to meet these obligations. (Id. ¶¶ 6, 41.) AIC had also raised over $2.3 million through the sale of AIC common and preferred stock. (Id. ¶ 42.) Investors—including many unsophisticated and elderly investors—lost millions of dollars in the defendants' scheme. (E.g., id. ¶ 6.) As to where the money went, Skaltsounis paid himself approximately a million dollars and caused over $3.6 million to be transferred to AIC's subsidiaries, namely defendant CB Securities and relief defendants Waterford, Advent, and CBS Advisors, all of which he effectively controlled. (Id. ¶¶ 32, 59.)

## III. PROCEDURAL HISTORY

On April 15, 2011, the Commission filed this action. The parties held their Rule 26(f) conference on January 5, 2012, and, the next day, the Commission staff served its first set of interrogatories and document requests on the AIC Defendants and the other defendants to this action. On September 28, 2012, the Commission filed a motion for leave to amend its complaint

(Doc. 60), which was granted on October 25 (Doc. 64). The Commission filed its amended complaint later that day. (Doc. 65.[2])

The AIC Defendants answered the amended complaint on November 8, 2012, and asserted a number of affirmative defenses. (Doc. 66.) One of the defenses asserted by the AIC Defendants is an advice-of-counsel defense. According to the AIC Defendants, when they were committing their securities fraud, they were actually relying on the advice of Thomas A. Grant, Esquire, of Troutman Sanders LLP. Although the Commission staff does not believe the defense has any merit—and, indeed, the discovery taken thus far has shown it to have no basis in fact—the Commission staff is entitled to take discovery on it. For their part, the AIC Defendants, in their initial disclosures and discovery responses on the issue of this purported defense alone, have identified no fewer than twenty-one individuals who purportedly have knowledge of communications between AIC and its then lawyer, Mr. Grant.

In addition, the AIC Defendants have identified numerous others supposedly with relevant knowledge who may be used to support their defenses, see Fed. R. Civ. P.

---

[2] In its amended complaint, the Commission asserts claims under Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Because the defendants, in addition to violating the aforementioned antifraud provisions of the federal securities laws, also sold securities in violation of the Securities Act's registration requirements, claims are brought under Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c). The Commission also seeks the imposition of controlling person liability against defendants AIC and CB Securities under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as well as aiding and abetting liability against defendant Skaltsounis under Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e). In addition, because relief defendants Waterford, Advent, and CBS Advisors were recipients of the ill-gotten proceeds of defendants' fraud, orders of disgorgement are sought against them. A claim under Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) & 80b-6(2), is also asserted against defendant Graves. In terms of the factual allegations, the amended complaint is largely the same as the original complaint, with the principal changes being the addition of the aiding and abetting claim against defendant Skaltsounis and a change in relief defendant CBS Advisors's name to reflect a corporate name change.

26(a)(1)(A)(i), such as AIC's former Chief Financial Officer (C. Franklin Flanary, II), other high-ranking executives (Harvey S. Martin, Roger F. Leibowitz, and Richard E. Landi), and other current or former employees and consultants (Carl Johnson, Della J. Tabar, James M. Mitchell, Ned Byrne, George J. Gilbert, and Pamela A. Lewis), who either "were involved in the operation of the Relief Defendants for many years," made presentations to prospective investors, or "have knowledge of matters relating to AIC, investments in AIC, and the Relief Defendants' legitimate businesses, and that there was no [P]onzi scheme or fraud." (AIC Defendants' Initial Disclosures at 4.) The AIC Defendants also identify the "[m]others, wives, husbands, sisters and other family members of AIC Board members" as persons with relevant knowledge. (Id. at 3.)

The present discovery dispute involves both the AIC Defendants' failure to adequately respond to the Commission's written discovery requests and the AIC Defendants' failure to act cooperatively in the scheduling of depositions, particularly when they have identified so many individuals as having relevant knowledge.

Before seeking judicial intervention, the Commission staff raised its discovery concerns with counsel for the AIC Defendants through multiple letters, e-mail messages, and telephone calls. These efforts were either ignored or rebuffed by the AIC Defendants, which led the Commission staff to seek a discovery conference with the Honorable H. Bruce Guyton (Doc. 67), pursuant to the terms of the Court's scheduling order (Doc. 41). Prior to the discovery conference, the parties submitted papers stating their positions on the dispute, and, the Commission staff, in its papers, described the ways in which the AIC Defendants were deficient in their discovery responses. (Doc. 68.) The discovery conference was held telephonically before Magistrate Judge Guyton on November 28, and, on November 30, Magistrate Judge Guyton issued an order that, inter alia, reset the trial date to September 23, 2013, and required

7

the parties, by no later than December 7, 2012, to confer further regarding the AIC Defendants' discovery deficiencies. (Doc. 70.)

The Commission's counsel, through letters of November 29 and 30 (Exs. B & C), sought to confer with the AIC Defendants' counsel, in accordance with Magistrate Judge Guyton's order and His Honor's instructions during the conference. The AIC Defendants' counsel responded with a November 30 e-mail message, in which he did not address the request for a conference, but instead demanded that the Commission's counsel send him another letter describing the discovery dispute. (Ex. D.) Then, the following Monday, December 3, the AIC Defendants' counsel sent another e-mail message stating that his father had died in Canada and that he would provide additional deposition dates to the Commission's counsel upon his return from Canada on December 9. (Ex. E.) Out of respect for counsel's loss, the Commission's counsel did not further correspond regarding the discovery dispute until December 10, through a letter that again explained the matters in dispute. (Ex. F.)

No substantive response to the December 10 letter came until Christmas Eve. (Ex. A.) In his December 24 e-mail message, the AIC Defendants' counsel: (a) promised to provide additional dates on which he was available for depositions by January 3, 2013; (b) confirmed his clients' obligation to provide requested (but still unproduced) financial records and to supplement deficient document request responses (and promised to supplement the deficient responses by January 6, 2013); and (c) refused to provide the documents identified during Ms. Tabar's deposition and, instead, told the Commission's counsel that the pertinent documents may be "somewhere in the 200 boxes of documents" located at the Richmond apartment building.

The Commission's counsel telephoned the AIC Defendants' counsel to discuss the December 24 e-mail message, but his call was not returned. Moreover, the AIC Defendants

failed to provide by January 3 the deposition dates that had been promised in the December 24 e-mail message. (Ex. A.) Because the discovery dispute remains unresolved, the Commission staff filed the instant motion to compel discovery.

IV. **ARGUMENT**

Both Federal Rule of Civil Procedure 37(a)(1) and section 3(i)(1) of the Court's scheduling order (Doc. 41) require parties to confer regarding a discovery dispute before any motion to compel is filed. If the parties are unable to resolve their dispute informally, the scheduling order further requires the parties to participate in a discovery conference with the Magistrate Judge assigned to the matter, before any motion to compel is filed. (Doc. 41 (§ 3(i)(2)).) Where, as here, the discovery dispute remains unresolved despite these efforts, a motion to compel discovery may be filed. (Doc. 41 § 3(i)(3).[3]) Federal Rule of Civil Procedure 37 "provides generally for sanctions against parties or persons unjustifiably resisting discovery." Fed. R. Civ. P. 37 advisory committee's note. The Rule "establishes the mechanisms by which Rules 26 to 36 can be made effective." 8B Charles Alan Wright et al., Federal Practice and Procedure § 2281 (3d ed. 2012). Here, the AIC Defendants have not engaged cooperatively with the Commission staff in the discovery process, and, accordingly, the Commission staff seeks an order compelling the AIC Defendants to comply with the discovery obligations imposed by the Rules.[4]

---

[3] The Commission has attached to its motion to compel discovery a certification of compliance with the provisions of the scheduling order and Federal Rule of Civil Procedure 37(a)(1).
[4] A copy of the Commission's January 6, 2012, document requests is attached as Exhibit G. A copy of the Commission's June 8, 2012, document requests is attached as Exhibit H. Copies of the AIC Defendants' responses to these document requests are attached as Exhibits I, J, and K.

### A. Documents Identified at Ms. Tabar's Deposition, and All Other Documents Responsive to the Commission's Requests, Must Be Produced in Accordance with the Rules.

The deposition of defendant Skaltsounis's former executive assistant, Della Tabar, took place on October 26, 2012. At her deposition, Ms. Tabar testified to the existence of two sets of documents that have not been produced by the AIC Defendants: (a) audio recordings of AIC corporate meetings; and (b) documents that listed investors and potential investors to whom investment materials were sent and other documents related to these communications. (Ex. L (Tabar Dep. at 146–48, 204–05).) Among other things, Ms. Tabar testified that she was responsible for operating the recording device at corporate meetings and that the audio tapes were filed with the official minutes of the meetings. (Tabar Dep. at 146–48.) Ms. Tabar also testified that she maintained a list of investors or potential investors and related documents and kept these materials in a file. (Tabar Dep. at 204–05.)

These documents (including the tapes) are responsive to the Commission's document requests served January 6, 2012, as well as the Commission staff's prior investigative subpoenas. The AIC Defendants' initial response—when they responded to the January 6 document requests—was silence. Neither the audio recordings nor the other documents ultimately revealed by Ms. Tabar were produced in response to the January 6 document requests, nor was the Commission staff even told of their existence. Rather, over nine months later, the Commission staff had to learn about these documents—for the first time—at a deposition of a third party, namely Ms. Tabar. Even then, the response from the AIC Defendants' counsel was, at best, evasive. When asked, at the Tabar deposition, whether the audio tapes would be produced, he provided no answer, and, as to Ms. Tabar's file containing documents evidencing

communications with investors and potential investors, he told the Commission staff, "[I]t doesn't exist." (Tabar Dep. at 205.)

After the deposition had concluded, counsel for the Commission made further inquiries about the audio recordings and other documents identified by Ms. Tabar (E.g., Ex. M), but these inquiries were also met with silence by the AIC Defendants' counsel. Then, on November 26, 2012—in a submission made in advance of the parties' discovery conference with Magistrate Judge Guyton—the AIC Defendants told the Court that they "have no audio recordings." (Ex. N, at p. 2)

The AIC Defendants' contention that there were no audio recordings survived for about eighteen hours: The next day, November 27, defendant Skaltsounis during deposition contradicted what the AIC Defendants, through their lawyer, told the Court and testified that audio recordings of corporate meetings were made and that any such tapes would be in storage at an apartment building in Richmond, Virginia. (Ex. O (1 Skaltsounis Dep. at 44–52).) In other words, the Commission staff once again had to extract at a deposition that which should have been provided in full responses to document requests issued ten months earlier.

On November 28, the parties had their discovery conference with Magistrate Judge Guyton. During the conference, the issue of the AIC Defendants' missing documents was raised, and Magistrate Judge Guyton ordered the parties to confer further about the matter by no later than December 7. (Doc. 70.) Counsel for the Commission sent letters to the AIC Defendants' counsel on November 29 and 30 seeking such a conference (Exs. B & C), but the AIC Defendants' counsel refused and, instead, demanded that the Commission's counsel describe in a letter how his clients' discovery responses had been deficient (Ex. D.) Even though this

information had been provided multiple times before, the Commission's counsel again provided it in a December 10 letter sent to the AIC Defendants' counsel. (Ex. F.)

No substantive response to the December 10 letter came until Christmas Eve, when counsel for the AIC Defendants told the Commission's counsel that, if the audio tapes and other documents identified by Ms. Tabar existed, they would be "somewhere in the 200 boxes of documents located at AIC's storage facility in Richmond." (Ex. A.[5])

The AIC Defendants' counsel's game of hide-and-go-seek does not comport with the Rules. Documents kept in storage are not "kept in the usual course of business." See, e.g., In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 351, 363 (N.D. Ill. 2005) ("[S]tored documents are not kept in the usual course of business within the meaning of the Rule."). Nor was there any attempt to "organize and label [the documents] to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Here, the "production" of documents at the Richmond apartment building was particularly problematic. Documents were stored in boxes (kept in no apparent order, with some boxes literally busting at the seams) and then placed in two different rooms on different floors of the apartment building: in an unfinished basement room (adjacent to what can

---

[5] For the record, the documents are actually stored at an apartment building in Richmond, not a "storage facility" as that term is commonly understood.

best be described as "dumping ground" for materials used by a local construction company) and in the apartment building's property management office.[6]

Under these circumstances, relief under Rule 37 is warranted. The AIC Defendants request the entry of an order:

> 1. requiring the AIC Defendants to review the documents at the Richmond apartment building or otherwise in their possession, custody, or control and to send to the Commission's counsel copies of all documents responsive to the Commission's document requests.
>
> 2. requiring the AIC Defendants to provide access to documents previously marked for copying by the Commission staff, so that those documents can be removed, copied or scanned off-site, and returned to the AIC Defendants; and

---

[6] Before resorting to judicial intervention, the Commission staff attempted—over the better part of two days—to review the documents at the Richmond apartment building and marked some documents for copying or scanning. After having certain of these documents imaged, the Commission staff contacted the AIC Defendants' counsel multiple times in attempt to facilitate a return of the documents. He still has not responded with a time when the documents can be returned. As to other documents that were marked for copying or scanning, when the Commission staff's courier came to retrieve the documents, he was refused access. The AIC Defendants' counsel has conceded that these documents must be turned over to the Commission's counsel (Ex. A), and, in addition to the other relief requested, the Commission staff requests that this agreement be reduced to an order. As to any documents copied or scanned by the Commission staff, the Commission staff will provide a disk or disks containing images of the documents, so that, in conjunction with their own review of the documents at the Richmond apartment building, the AIC Defendants do not need to copy or scan documents already imaged by the Commission staff.

3. prohibiting the AIC Defendants from using at trial or otherwise in this case any document not copied or scanned by the Commission staff or actually sent to the Commission staff by the AIC Defendants.[7]

The audio recordings of AIC corporate meetings could be of critical importance in this case. In particular, they could shed light on the AIC Defendants' purported defense that company counsel gave advice at board meetings or on other occasions that related to the AIC Defendants' methods for selling securities. Likewise, the other documents identified by Ms. Tabar (i.e., those related to communications with investors or potential investors) could be of significant importance in this case where the defendants' misrepresentations and omissions to investors are central.

Ultimately, then, this issue may be before the Court on a request by the Commission staff for a spoliation inference. If that is the case, it makes little sense to shift the burden of reviewing the AIC Defendants' documents to the Commission staff. If the Commission staff does not find the audio recordings and other documents, the AIC Defendants will likely argue that the Commission staff was not looking hard enough. Which will bring the parties and the Court back to where we are now: long-requested documents, still unproduced, and shifting explanations by the AIC Defendants as to whether they still exist. Plus, the documents at the Richmond apartment building are not organized in a manner consistent with the Rules, and at least some of

---

[7] This third item is requested so that no unfair surprise befalls the Commission. Unless a document has been selected and copied or scanned by the Commission staff (and which documents have been copied or scanned will be reflected on the disk or disks that will be provided by the Commission staff to the AIC Defendants, see supra note 6) or a copy of the document has actually been sent to the Commission's counsel by the AIC Defendants, then the AIC Defendants should not be allowed to use the document at trial or otherwise. Given that the documents at the Richmond apartment building were not organized in any of the ways required by the Rules, there is too much of a risk of unfair surprise through the use of a document buried in one of the approximately 200 boxes kept at the apartment building.

14

Case 3:11-cv-00176-TAV-HBG Document 77 Filed 01/04/13 Page 14 of 18 PageID #: 819

the documents are in a condition that makes their review impracticable.[8] Under these circumstances—and given the effort already expended by the Commission staff with respect to the documents stored at the Richmond apartment building—the proper relief is to have the AIC Defendants be responsible for their own documents and to provide copies of all responsive documents to the Commission staff.

### B. Counsel for the AIC Defendants Agreed to Provide Deposition Dates by January 3, 2013, and Failed to Do So.

Part of the present discovery dispute revolves around the fact that the AIC Defendants have identified many individuals as having relevant knowledge who might be used to support their defenses but have effectively—through unilateral and unreasonable scheduling demands—stymied the Commission's attempts to obtain deposition testimony from them. For instance, before requesting a discovery conference with Magistrate Judge Guyton, counsel for the Commission requested dates for several depositions during the month of November, so that these depositions could be taken in advance of then December 7 deadline for the Commission to serve expert disclosures. All of the depositions were of persons identified by the AIC Defendants in their disclosures and discovery papers as having relevant knowledge. Despite assurances from the AIC Defendants' counsel that adequate dates would be provided, when he finally provided his available deposition dates, only one was during the month of November, and only five were

---

[8] For instance, the boxes in the property management office are stored either under a low overhang near the property manager's desk or in a tall pile of boxes in a corner of the office. In either event, there is no room to practicably review the documents in the property management office.

for an entire eight-week period, and most of the available deposition dates fell after the discovery cut-off date in place at the time.[9]

Previously in this brief, the Commission staff has outlined its efforts to resolve this dispute. Indeed, counsel for the AIC Defendants has conceded that more dates must be provided—and even promised to do so at least twice. Given that those promises were broken, the Commission staff requests that the matter of deposition scheduling be referred to Magistrate Judge Guyton for His Honor's assistance in facilitating deposition scheduling to conclude discovery with minimal further delay.

### C. *The AIC Defendants' Document Request Responses Should Be Supplemented by January 6, and All Responsive Documents Should Be Produced.*

Several of the AIC Defendants' responses to the Commission's document requests were deficient, in that they attempted to limit the scope of the response. For instance, the AIC Defendants have stated that they would only turn over responsive documents in one defendant's "possession" or "possession and control." Of course, this does not comport with the Rules, which require that all responsive, non-privileged documents in <u>any</u> of the AIC Defendants' "possession, custody, or control" be produced. Fed. R. Civ. P. 34(a)(1).

But it does not serve any purpose to belabor the point and to identify each deficiency, because the AIC Defendants have committed to providing appropriate responses by January 6. (Ex. A.) This commitment should be reduced to an order.[10]

---

[9] After the discovery conference, Magistrate Judge Guyton issued an order extending the trial date to September 23, 2013, which had the effect of extending intermediate deadlines, including for expert disclosures and discovery. (Doc. 70.)

[10] The proposed form of order being sent to chambers reflects the January 6 date suggested by the AIC Defendants. It is the Commission staff's hope that the AIC Defendants will keep their promise and comply by then. But, to the extent that that does not happen (and given that the motion almost undoubtedly will not be ruled on by that date), an alternate deadline may be necessary, such as seven days from the date of any order.

It is also the case that previously AIC and its affiliates turned over copies of the general ledgers for AIC, CB Securities, Waterford, and Advent—but not for CBS Advisors. The general ledgers for relief defendant CBS Advisors remain unproduced, despite the fact that they were called for in the Commission's January 6, 2012, document requests (as well as the Commission staff's prior investigative subpoenas), and despite the fact that the Commission's counsel has been inquiring about them for months.

But, again, the AIC Defendants have committed to providing the missing documents. All unproduced financial records for any of the AIC Defendants, including accounting, bank, and other records, should be produced by January 6, 2013.[11]

## V. CONCLUSION

For all of the foregoing reasons, the Commission's Motion to Compel Discovery should be granted.

Respectfully submitted,

Dated: January 4, 2013.

s/ Michael J. Rinaldi
G. Jeffrey Boujoukos
Michael J. Rinaldi
Scott A. Thompson

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, Pa. 19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
RinaldiM@sec.gov

---

[11] The most obvious gap in the AIC Defendants' production of financial records is the missing general ledgers for relief defendant CBS Advisors. But what financial records the AIC Defendants have—and which have been updated with more recent information since their prior productions—is information uniquely within their control. It is the AIC Defendants' responsibility to respond to the document requests and to produce responsive documents.

## CERTIFICATE OF SERVICE

I hereby certify, this fourth of January, 2013, that I served a true and correct copy of the foregoing Opening Brief in Support of Plaintiff's Motion to Compel Discovery, by the means indicated, upon the following:

> Heather G. Anderson, Esq.
> Reeves, Herbert & Anderson, P.A.
> Tyson Place, Suite 130
> 2607 Kingston Pike
> Knoxville, Tenn. 37919
> (by the Court's electronic filing system)
>
> Steven S. Biss, Esq.
> 300 W. Main St., Ste. 102
> Charlottesville, Va. 22903
> (by the Court's electronic filing system)
>
> Mr. John B. Guyette
> 2559 53rd Avenue
> Greeley, Colo. 80634
> (by e-mail and first-class mail, postage prepaid)
>
> Mr. John R. Graves
> 4300 W. Francisco Road, Unit 11
> Pensacola, Fla. 32504
> (by e-mail and first-class mail, postage prepaid)

s/ Michael J. Rinaldi
Michael J. Rinaldi
