# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE, TENNESSEE

Securities & Exchange Commission, :
                                      :

                 Plaintiff,      :

                                        :

vs.                                 :      Case No. 3:11-cv-176

                                      :

AIC, Inc., et al.              :      **Motion for Sanctions**

                                      :      (Telephone Conference)

                    Defendants.  :

Transcript of proceedings before the Honorable H. Bruce Guyton,

U. S. Magistrate Judge, on August 14th, 2013.

Appearances(by telephone):

                 On behalf of the Plaintiff:

                    Michael J. Rinaldi, Esq.
                    Philadelphia, Pennsylvania

                 On behalf of the Defendants:

          Heather G. Anderson, Esq.     Steven S. Biss, Esq.
          Knoxville, Tennessee           Charlottesville, VA

Court Reporter:

                    Donnetta Kocuba, RMR
                    800 Market Street, Suite 132
                    Knoxville, Tennessee 37902
                    (865) 524-4590

1    (Whereupon, Monday, August 14th, 2013, Court convened in

2  the following matter at 2:00 p.m.)

3    COURTROOM DEPUTY:  Case No. 3:11-cv-176,

4  Securities and Exchange Commission versus AIC, Inc., et al. Here

5  on behalf of Plaintiff is Michael Rinaldi. Mr. Rinaldi, are you

6  ready to proceed?

7    MR. RINALDI(by phone):  Yes, your Honor.

8    COURTROOM DEPUTY:  Also present on the line is

9  Steven Biss and Heather Anderson. Mr. Biss, are you ready to

10 proceed?

11    MR. BISS(by phone):  Yes, ma'am.

12    COURTROOM DEPUTY:  Ms. Anderson, are you

13 ready to proceed?

14    MS. ANDERSON(by phone):  Yes.

15    THE COURT:  All right.  Good afternoon, counsel.

16 We're here on a motion hearing, so we do have a court reporter

17 here and we are recording as well.

18    We're taking up the document styled "Plaintiff's Emergency

19 Motion for Sanctions," which was filed on August the 6th, and the

20 Court has reviewed everything you have filed, including the reply

21 brief that was filed yesterday.

22    I did go back through the file in general to review other

23 matters as well. So what I'm saying is, we do not need to recite

24 everything that's in the filings. I understand the dispute, I think.

25 What I would like to do is ask some questions that I have of the

1    parties, and then I'll give you, of course, as much opportunity or

2    time as you think you want or need to address these issues.

3        But I want to begin with you, Mr. Rinaldi. With regard to

4    these documents or boxes in question, would it be possible for your

5    client to just go get all the remaining boxes and be done with this

6    issue?

7        MR. RINALDI:  That would certainly be one way to

8    handle it, your Honor.  We're now 40 days from trial. We have, in

9    addition to numbers that we've assigned to these boxes, we have

10   also recorded– my paralegal recorded the information that's set

11   forth on the side of the boxes that apparently the Defendants put

12   there.

13       There's some cataloging, so some that we could use. If we had

14   full access to the building and an identification of all rooms that

15   contain the boxes, we could do that. We're 40 days from trial, so

16   it's not the most ideal way to spend my time or my paralegal's time.

17   But, your Honor, you're correct, that that would be one way to

18   handle it.

19       THE COURT:  Well, on the issue of your trial, have you

20   checked with the district judge about your status on his calendar?

21   In other words, do you have criminal trials in front of you? What is

22   the status?

23       MR. RINALDI:  We know the trial has been set for

24   September 23rd pursuant to a prior order of the Court. I'm not aware

25   of any other matters that would come before that. But I haven't

1  checked recently.

2  THE COURT: Okay. All right. Well, let me make sure

3  I understand something else. This cataloging, or whatever, did you

4  create a listing of the boxes?

5  MR. RINALDI: Yes. What happened was, we went

6  down and– I think it was September of last year, 2012, and the

7  paralegal and I spent two days at this apartment building in

8  Richmond, Virginia, and there were two rooms that contained

9  boxes; one was the upstairs property management office. It was

10  sort of like the office where tenants would come to pay their rent to

11  live in this particular apartment building.

12  Those boxes were basically in a condition that we could not

13  even begin to review them. They were in very tight condition. It

14  wasn't even practicable. The basement, documents in the

15  basement, unfinished cellar room, were the documents that we

16  went through, and there were approximately 125 or more boxes in

17  that, that basement.

18  But I and my paralegal went through every one of those boxes,

19  and we determined which boxes had responsive documents and

20  which ones didn't, and we numbered the boxes with temporary

21  labels that we then put on a spreadsheet.

22  So we would have the label number, a description of what was

23  in the box, files or the like, and then a recording of what was

24  already on the boxes. So on the outside of the boxes it might say

25  something along the lines of "AB Securities, client files, A to L,"

1    or whatever.

2            THE COURT:   All right.  Then those are the boxes that

3    you were going to go get, that you went and got some of in April,

4    May, correct?

5            MR. RINALDI:  Yes. What happened was, the number

6    of boxes was so voluminous, when our courier came down to pick

7    up the boxes, he could only fit so many of the boxes in his truck or

8    van. And then, when he came back to pick up the remaining boxes,

9    he was denied access, when we should have– this entire issue

10   developed over the course of the last several months, where we

11   were trying to get access to the remaining boxes.

12         But what we did was, when we reviewed the boxes, we took

13   the boxes that had responsive boxes and we set them aside, put–

14   (interference on telephone) where these boxes were so the courier

15   could pick them up.

16         When the courier goes down and– remember, your Honor, I

17   wasn't there when the courier came, so this is not quite my

18   firsthand reckoning or recollection of what happened.

19         So when the courier came, basically– and I think it's admitted

20   by the Defendants here– the boxes were all moved, the boxes in the

21   upstairs property management office, were moved from the

22   basement, and basically things were a big, jumbled mess such that

23   we couldn't get the boxes that me and my paralegal spent literally

24   two days, you know, in pretty bad conditions, going through and

25   expending a significant amount of our time marking for copying.

1   That's really what's at issue.

2        And, you know, I went so far as to go back to that catalog that

3   my paralegal put together, identify which boxes were at issue, and I

4   sent a letter on May 8th to Mr. Biss, saying these were the boxes we

5   want. Unfortunately, this issue has been going on for months, and

6   we're now pretty close to trial, and we're just looking for some

7   relief.

8        THE COURT:   Well, you know, it seems to me that the

9   genesis of this problem was not getting all the boxes that you

10  wanted when you had access. And you're telling me you went back

11  or the courier went back the next day and was denied access, and

12  we went through all that before, in July.

13       MR. RINALDI:   Right. Your Honor, when he went– we

14  then moved, when your Honor issued an order, you know, it being

15  on March 5th, and that gave us access to go back, get the boxes.

16  When the courier went back to get the boxes, before he went back, I

17  wrote a letter to defense counsel saying, hey, are all the boxes in

18  place where they were before?

19       Because my instructions to the courier was–

20       MS. ANDERSON:   Mr. Rinaldi? This is Heather

21  Anderson. For some reason Mr. Biss has dropped off. He's calling

22  back. Hold on one second.

23       MR. RINALDI:   Okay. Sure.

24       MS. ANDERSON:   I'm sorry. All right. Is everybody

25  here again?

1          MR. BISS:  This is Steve Biss. I'm here again.

2          MS. ANDERSON:  Okay.

3          MR. RINALDI:   Your Honor, I'm happy to answer that

4    question, your Honor. So prior to having the courier go back down

5    in March, pursuant to your Honor's order of March 5, I wrote to

6    defense counsel.

7          I said, look, it seems to me that the boxes we need to pick up

8    are the boxes we were previously denied access to that were in the

9    cellar room and the boxes in the upstairs property management

10   office. Tell me that all the boxes are in place so my courier can go

11   in, get those boxes in the downstairs room and then go upstairs, get

12   the boxes from the upstairs room, and then we're done.

13         And then what the courier found when he got out there was,

14   that the boxes were a jumbled mess. So he found whatever he could

15   find that was– you know, at that point he looked into the basement

16   and the cellar room and left. And when we went back and cataloged

17   those boxes, we found that there were 13, which we identified to

18   Mr. Biss, 13 boxes that were missing.

19         But it wasn't the courier's fault. The courier was given a

20   pretty impossible task. You know, here's a bunch of boxes, they

21   have been moved all around in the building. We can't tell you for

22   sure which ones came from the upstairs property management

23   room, we don't know where the boxes are, et cetera. And he

24   basically got whatever boxes he could get.

25         And, you know, I thought that most litigants would not put

1   themselves in that situation. But one would think, you know, given

2   the situation the Defendants found themselves in, they would bend

3   over backwards to make whatever accommodations were necessary

4   to segregate the boxes, set them aside, have the courier come down,

5   pick them up, review them, and return them, and that would be the

6   end of it.

7         And we, the Commission, has proven that we're willing to

8   spend the time and energy and, frankly, resources to keep sending

9   the courier down to get those boxes as many times as necessary.

10  But it just doesn't make any sense to do that if we're not even

11  being given the representation that they found the boxes, they can

12  make some kind of representation that the boxes are where they

13  will be, and the courier will be able to pick them up and take them

14  out of there.

15        THE COURT:   You haven't sent any kind of a summary

16  of your catalog for them to look for the boxes, have you?

17        MR. RINALDI:   No, I haven't, your Honor.

18        THE COURT:   What I meant to say earlier was, it seems

19  to me like the genesis of this problem was the courier not getting

20  all the boxes on the initial trip. That's what I was saying. And I

21  understand you said the courier went back the next day and he

22  couldn't get access.

23        MR. RINALDI:   Right.

24        THE COURT:   And we have been going through this

25  other process, and now we have a situation where you think there

1    should be some boxes there that match a certain description based

2    on your cataloging, and the Defendant– well, I'm going to hear

3    from Mr. Biss, but I, just from reading his client's statement, it

4    looks like they're taking the position that they are not finding any

5    such labeled documents, which leads me to my next question for

6    you, Mr. Rinaldi.

7        Are you saying that it's your client's position that the

8    documents you've marked or labeled have been hidden or

9    destroyed since you labeled them? Is that what you're saying?

10        MR. RINALDI:  Your Honor, we're not making any

11    such allegation. You know, I'm in a position where I don't know

12    what's going on in the building. When we went down and we

13    reviewed the documents, it was with the understanding that we had

14    with defense counsel that it might take more than one trip, to go

15    and pick up all of those documents.

16        I mean, this is not a mystery to anybody involved. And what I

17    did– and I was very particular about this. When we got done

18    reviewing the documents, I sat the documents up very neatly on one

19    end of the room so that everybody knew what we had marked as

20    responsive and that they could be picked up. And then we knew

21    that the boxes upstairs were up there, and we could easily pick

22    those up and remove them to another location and review them and

23    get the boxes back to Mr. Biss' client.

24        So I, you know, I'm not going to make an allegation that they

25    have deliberately done something. I don't know what they've

1    done. So that's pretty much that.

2        You know, I will say, your Honor, all of this has been

3    extremely costly for the Commission. You know, when I send a

4    letter on May 8th to Mr. Biss, saying here are the boxes at issue, can

5    we just work this out, it's my expectation that defense counsel is

6    going to read that letter and come up with a meaningful response.

7        And, frankly, there back in May, it would have been much

8    easier for me to, you know, work with them and say, hey, here's the

9    cataloging I have and let's just get this thing worked out. And

10   basically my letter is being dismissed as merely written to create a

11   record, disingenuous.

12       But the bottom line is, is there is no response to it. And I had

13   to file another motion to get access to the boxes. The motion was

14   granted, the motion–

15           THE COURT:   I know.  I understand, yeah, I

16   understand. We're going now, we're going through the filing that

17   you've already done.

18           MR. RINALDI:  Yes. Right. So, I mean, that's basically

19   our position, we're entitled to get what the Court had previously

20   ordered.

21           THE COURT:   Well, what are you asking? One thing I

22   don't quite get from your filings is, what exactly are you asking the

23   Court to do?

24           MR. RINALDI:   Well, I think there are four things that

25   the Court can do that would be helpful to the Commission. Number

1    one is, Mr. Skaltsounis could be ordered tomorrow to go out and to

2    look at every one of the sides of those boxes and record his own,

3    his own categorization of those boxes, send that to the

4    Commission's counsel, and the Commission's counsel will tell him

5    precisely what boxes we want.

6         We will pay the cost of sending a courier down to pick up

7    those boxes. And, by the way, at the same time, return the boxes

8    that we've had to bear the burden of storing for all this month.

9    We'll return those boxes at the same time, and that will be it.

10        So Mr. Skaltsounis doesn't have to look for anymore boxes.

11   All he needs to do is go through whatever boxes are in his

12   possession, record what the descriptions are. We will then match

13   them up against our list and tell him which boxes we want. That's

14   one thing that could be done.

15        Number two is, we may need some relief from some of these

16   intermediate deadlines before trial; you know, talking about a

17   witness list, disclosures, et cetera. We don't think there would be

18   any objection to that, but given what we're going through right

19   now, we think that that would be reasonable.

20        Third is, to the extent that these boxes, the boxes contain

21   documents that, frankly, should have been produced to us months

22   ago, we think the Court should consider– and it doesn't have to do

23   it today or on this particular motion– some preclusion of evidence

24   at trial against the AIC defendants and the relief defendants.

25        And four is some kind of monetary sanctions.  This has been

1   going on for weeks and many months. The parties' document

2   discovery is the simplest form of discovery in a civil action. You

3   know, I've been involved on both the plaintiff's side and defense

4   side, and I've never seen such a complete lack of dealing

5   cooperatively with the other side.

6        Things happen all the time in document discovery; couriers

7   have to go back and get boxes. And there's the basic expectation

8   that each side is going to read the mail that is sent to them by the

9   other side and respond promptly, and that you shouldn't have to go

10  through three motions to get your documents.

11       That's what we have been put through. Nobody, nobody

12  contends, and nobody could contend, that we're not entitled to the

13  boxes. There's already been two orders of this court. And what we

14  get in response is a 4:54 p.m. e-mail message, saying, I'm sorry, I

15  can't help you, but I'm prepared to assist.

16       It's just inexcusable, and we think that the motion for

17  sanctions is well-taken and should be granted, those four specific

18  points of relief that we've mentioned, should be granted. None of

19  them are unreasonable.

20            THE COURT:   What deadlines do you think need to be

21  changed?

22            MR. RINALDI:   We have a supplemental witness list.

23  We would like to push that back. We may, obviously, need to push

24  back the exhibit list.

25            THE COURT:   I'm not asking you about "may." I'm

1   asking you very specifically what deadlines do you think need to be

2   changed.

3              MR. RINALDI:  We would like to have additional time

4   to serve a supplemental witness list. We would like to have

5   additional time–

6              THE COURT:  How much time are you asking for?

7              MR. RINALDI:  Right now, if the deadline were moved

8   back to the–

9              THE COURT:  I can't hear you.

10              MR. RINALDI:  I'm sorry. If the deadline were moved

11   to the 23rd of August, that would be helpful. That would be now the

12   deadline for the service of, for instance, the pretrial order. That

13   would be helpful. And, obviously, the exhibit list deadline as it

14   relates to the Commission, that there may be additional documents

15   in there that we want to mark as exhibits, that deadline is August

16   23rd. We might need some relief on that.

17              THE COURT:  Well, what are you asking for? That's

18   my question. The supplemental, the supplemental witness list, are

19   you saying your deadline is August 23rd?

20              MR. RINALDI:  Well, what I'm saying, if that deadline

21   could be moved to August 23rd.

22              THE COURT:  Okay.

23              MR. RINALDI:  That would be awesome or that would

24   be helpful.

25              THE COURT:  All right.  What about the exhibit list?

1    MR. RINALDI:   The exhibit list, the current deadline is

2    August 23rd. For right now, if that could be moved a week, to

3    August 30th, that would still give us plenty of time before the

4    pretrial conference September 13th to work out any issues with the

5    exhibits. But, at a minimum, that would seem appropriate.

6    We think we can get proposed jury instructions and the

7    pretrial order filed, the pretrial order, if we have cooperation from

8    the Defendants on that.

9    So those are the two specific deadlines. And, obviously, to the

10   extent that there's any issues in those documents that would raise

11   an issue, an evidentiary issue, we would like to be able to file a

12   motion <u>in limine</u> with respect to those issues.

13   So there's three deadlines that we would ask to be moved. The

14   supplemental witness list to be filed on August 23rd, we would like

15   at least a week. We may need to come back, get more time,

16   depending on what we see in the documents. Exhibits, to August

17   30th.

18   And to the extent that any of these documents raise any issues

19   that could be addressed at motion <u>in limine</u>, we would like

20   additional time to file motions <u>in limine</u> related to those issues,

21   and, of course, those extensions which apply to the Commission.

22   THE COURT:   What kind of extension on motion <u>in</u>

23   <u>limines</u> are you asking for?

24   MR. RINALDI:   You know, I think, I think until– I'd

25   have to look at my calendar, your Honor. On the motion <u>in limine</u>,

1    if we could have until December 6th.

2              THE COURT:   Any other deadlines that you're asking

3    to be moved?

4              MR. RINALDI:   No, your Honor.

5              THE COURT:   All right.  What are you talking about in

6    terms of monetary sanctions that you haven't stated in your filing?

7              MR. RINALDI:   Well, I mean, we would leave it up to

8    your Honor.  I mean, we can certainly itemize the amount of money

9    that we've spent sending the courier down, if your Honor would

10   like that, or we could set a flat amount of sanctions.  You know, a

11   couple thousand dollars would seem appropriate and not out of

12   line, given what's gone on here.

13             THE COURT:   All right.  Anything else, Mr. Rinaldi?

14             MR. RINALDI:   No, your Honor.

15             THE COURT:   Is there any reason why you can't have a

16   courier down there tomorrow to pick up boxes?

17             MR. RINALDI:   I would need to check with the courier

18   service. It would probably take more time than that, but I think we

19   could get it done this week, if need be.

20             THE COURT:   All right.  Mr. Biss?

21             MR. BISS:   Judge, good afternoon. One thing I want to

22   make clear, we have never denied access to Mr. Rinaldi, anybody

23   affiliated with Mr. Rinaldi, or his courier, at any point in time. Not

24   once have we ever denied access or have they been denied access to

25   pick up documents. I have been repeatedly asking for dates to

1    return the boxes that they have.

2         His proposal about Mr. Skaltsounis going down and making

3    an inventory of the markings on the boxes, which are our markings.

4    There are no markings that Mr. Rinaldi has on these boxes–

5              THE COURT:   I'm sorry. I can't hear you, Mr. Biss.

6              MR. BISS:  –we are happy to do that–

7              THE COURT:   I'm sorry. I couldn't hear you, Mr. Biss.

8    Mr. Biss, I can't hear you. Mr. Biss?

9              MR. BISS:  Yes, sir.  Can you hear me, Judge?

10             THE COURT:   If you would just back up and give me

11   the last three comments again. I could not hear them.

12             MR. BISS:   Judge, my comments were, first, Mr.

13   Skaltsounis would be happy to go down and make an inventory of

14   the markings on the box. We'll get that to Mr. Rinaldi, and that's

15   number one.

16        If he really wants me to do that, we can make an inventory of

17   what's on the box. The boxes have been segregated. They can be

18   picked up tomorrow. The courier just has to go pick them up.

19   They've already been segregated. They're sitting in a known

20   location. They're exactly where the courier left them last time the

21   courier was there when he couldn't pick up all the boxes.

22        So we can get the boxes to him tomorrow if the courier comes

23   down, and we can make arrangements for the boxes that they have

24   already to be returned.

25        You know, the first question that you asked, Judge, was

1    something I proposed to Mr. Rinaldi earlier this morning and

2    possibly yesterday, come and get the boxes of documents, let's

3    resolve this dispute, get the documents. And whatever else we want

4    to talk about, we can talk about.

5         But, you know, Mr. Skaltsounis has been down there

6    repeatedly to try to find markings for these 13 boxes, and they're

7    not there. It's not like there's some symbol on boxes that we were

8    able to readily say, you know, that's one of the 13 boxes. But he

9    can go down and he can make an inventory of the markings that are

10   actually on the boxes and–

11        THE COURT:   Well, why can't– let me ask you this

12   question, Mr. Biss. It seems to me like there's a problem in whether

13   we're talking about the same boxes. Because the Plaintiff says

14   there are boxes that have labels on them that were put there by the

15   SEC, and your client's filing says that there are no labels affixed to

16   any of the boxes that are SEC labels.

17        Now, I'm having a hard time getting past that inconsistency

18   between the two parties' positions. I don't really know what to

19   make of it. Is it possible for your client to take an iPhone or

20   something down there and just take pictures of the boxes and what

21   they look like and e-mail them to Mr. Rinaldi or his paralegal so

22   that they can say, look, here's what it looks like?

23        Because I don't really– I can't figure out why one side says

24   there's 13 boxes that we put labels on and the other side says we

25   have the 13 boxes for them to be picked up, but there are no labels

1  on them. Maybe it's just going to be a situation where the courier

2  is just going to have to go get the boxes and see if they are the

3  boxes, without labels.

4      I don't know what else to suggest, but that's the problem I'm

5  having with this from a factual standpoint. So what do you suggest,

6  Mr. Biss?

7          MR. BISS:  Your Honor, I have and have had for a week

8  now the same issue. I have a client who has been down there at

9  least three times looking for these documents, and he's got boxes

10 segregated, and he's telling me there are no SEC labels on these,

11 there's nothing that would indicate to me that this is a box that Mr.

12 Rinaldi reviewed. There's no orange label, there's no red label,

13 nothing that would give us a real sense that this is one of the 13

14 boxes.

15     My proposal is to either e-mail photographs of the remaining

16 boxes with– not a photograph of the box, but a photograph of any

17 identifying mark on the box. There has to be something about these

18 boxes that would indicate to Mr. Rinaldi that he's reviewed them

19 and he logged them. He has a catalog, which I don't know what's

20 on the catalog.

21     But he's got some indication in his office, or his paralegal

22 does, of exactly what he has reviewed and that he wants picked up.

23 And Mr. Skaltsounis can go to these boxes and he can take a

24 photograph of any identifying mark, and that photograph can be e-

25 mailed to Mr. Rinaldi and– because there's very few boxes left that

1    I think they want.

2          We can photograph the identifying marks, and then Mr.

3    Rinaldi can let me know which boxes he wants to pick up or, in the

4    alternative, he can go down and have the courier pick up the

5    remaining boxes, if that's his preference. Either solution is

6    workable.

7          THE COURT:   Do you have any objection to the

8    deadline extensions that have been requested?

9          MR. BISS:   No, sir.

10          THE COURT:   All right.  Mr. Rinaldi, anything else

11   today?

12          MR. RINALDI:   No, your Honor.

13          THE COURT:   All right.  I'll put down an order on the

14   motion quickly, but, in the meantime, I would encourage Mr. Biss'

15   client to forward to Mr. Rinaldi's office as quickly as possible

16   identifying information on these boxes, which seems to me like it's

17   quicker to do it by photographs than anything else.

18          But, in the meantime, if Mr. Rinaldi decides that, starting

19   tomorrow, he just wants to take all the boxes and look at them

20   himself, personally, which is probably a good idea, then you

21   should be able to do that. And Mr. Biss has said it can be done and

22   access will not be denied for these boxes to be picked up.

23          Now, if after these boxes are acquired by the SEC and the SEC

24   still takes the position that there are 13 boxes that are now missing

25   which were previously labeled and set aside and can't be found

1  anywhere in this building, then I'll have no choice but to have an

2  evidentiary hearing on discovery abuse, which, no doubt, will lead

3  to sanctions. I don't know what else to do.

4       It's an unusual factual scenario I'm faced with. But

5  documents stacked in boxes should be something that should be

6  able to be obtained. Obviously, the Court's going to order that, and

7  the Court is going to grant the request for deadline extensions and

8  take these other requests under advisement and deal with them in

9  the order. That's all I can tell you right now.

10      But I believe what I'm hearing is a commitment from both

11  sides to resolve this matter, and I don't think I'm hearing any

12  objection to the SEC getting any and all documents they have

13  requested, so there should be no impediment.

14      Is there any other issue that any party believes should be

15  brought before the Court today in this case? Mr. Rinaldi?

16          MR. RINALDI:  No, your Honor.

17          THE COURT:  Mr. Biss?

18          MR. BISS:  No, your Honor.

19          THE COURT:  Ms. Anderson, anything else?

20          MS. ANDERSON:  No, your Honor.

21          THE COURT:  All right. Thank you, counsel. As I said,

22  we'll go to work on this order immediately. Thank you.

23          MR. RINALDI:  Thank you, your Honor.

24          MR. BISS:  Thank you, your Honor.

25      (Hearing concluded at 2:35 p.m.)

# C E R T I F I C A T I O N

I certify that the foregoing is an accurate transcript (<u>accurate to the extent reporter could understand voices over the telephone</u>) of the record of proceedings in the titled matter.


        */s/Donnetta Kocuba*                              8/16/13
Donnetta Kocuba, RPR-RMR
Official Court Reporter
U.S. District Court
Knoxville, Tennessee