UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:11-CV-176-TAV-HBG |
| ) | |
| AIC, INC., COMMUNITY BANKERS ) | |
| SECURITIES, LLC, and ) | |
| NICHOLAS D. SKALTSOUNIS, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| ALLIED BEACON PARTNERS, INC., ) | |
| (f/k/a Waterford Investment Services, Inc.), ) | |
| ADVENT SECURITIES, INC., and ALLIED ) | |
| BEACON WEALTH MANAGEMENT, LLC ) | |
| (f/k/a CBS Advisors, LLC), ) | |
| ) | |
| Relief Defendants. ) | |

# MEMORANDUM OPINION

This matter is before the Court on plaintiff Securities and Exchange Commission's ("SEC") Motion for Entry of Final Judgment [Doc. 205], in which the SEC moves the Court for the entry of judgments against defendants AIC, Inc. ("AIC"), Community Bankers Securities, LLC ("CB Securities"), and Nicholas D. Skaltsounis ("Skaltsounis") (collectively, "AIC defendants"), seeking permanent injunctive relief, disgorgement and prejudgment interest, as well as the assessment of statutory civil penalties. In addition, the SEC seeks disgorgement against the relief defendants in this matter, Allied Beacon

Partners, Inc. (formerly known as "Waterford Investment Services, Inc."), Advent Securities, Inc. ("Advent"), and Allied Beacon Wealth Management ("ABWM") (formerly known as CBS Advisors, LLC) (collectively, "relief defendants"), in light of the jury's finding of liability as to the AIC defendants. The AIC defendants and relief defendants submitted a response [Doc. 207], opposing the requested relief, to which the SEC submitted a reply [Doc. 208]. Having considered the arguments of the parties, in light of the record in this case and the prevailing case law, the SEC's motion will be granted in part and denied in part to the extent discussed herein.

I.   **Relevant Background[1]**

The SEC commenced this civil enforcement action in 2011, claiming that the AIC defendants, along with others,[2] committed numerous violations of the federal securities laws from the offering of promissory notes and stock in AIC, a Virginia holding company, by orchestrating an offering fraud that defrauded investors of millions of dollars in multiple states, with the proceeds distributed amongst the AIC defendants and relief defendants [Doc. 65]. Prior to the start of trial in this matter, the Court issued a Memorandum Opinion and Order [Doc. 159], in which the Court, in ruling on plaintiff's motion for partial summary judgment [Doc. 93], concluded that the AIC defendants were liable for violating Section 5 of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and (c),

---

[1] Although discussed to the extent necessary for the Court's analysis of the present motion, the Court presumes familiarity with the facts and circumstances of this case.

[2] The SEC also alleged various claims against former co-defendants Mr. John Guyette and Mr. John Graves, former securities brokers with CB Securities, both of whom settled their claims with the SEC prior to trial in this matter [*See* Docs. 146, 156].

and that the relief defendants would be subject to disgorgement pending a finding of liability against the AIC defendants on the SEC's fraud claims. At the conclusion of the trial held from September 23, 2013 through October 10, 2013, the jury found the following: (1) that the AIC defendants were liable under Section 17(a) of the Securities Act of 1933; (2) that the AIC defendants were liable under Section 10(b) of the Exchange Act of 1934, and Rule 10b-5 thereunder; (3) that AIC and CB Securities were liable as control persons under Section 20(a) of the Exchange Act; and (4) that Skaltsounis was liable for aiding and abetting violations of the securities laws under Section 20(e) of the Exchange Act.

## II. Analysis

In support of their motion, the SEC submits that a permanent injunction, disgorgement along with prejudgment interest, and civil penalties are appropriate based on the nature of the AIC defendants' scheme. The SEC contends that the evidence at trial showed that the AIC defendants raised over $6 million from investors, and in doing so, omitted relevant financial information regarding AIC's financial state and made misrepresentations regarding AIC's ability to repay on its notes and other information about the company. As confirmed by the jury's finding of liability, the SEC argues, the AIC defendants also acted with scienter, knowingly engaging in fraud over a period of four years. In light of the fact that the AIC defendants have failed to make assurances against future violations, the SEC submits, injunctive relief, disgorgement, and a third-tier statutory penalty for each of the AIC defendants are the only sufficient remedies to

3

punish misconduct and afford both specific and general deterrence against future acts of securities fraud.

The AIC and relief defendants respond that the amount of any judgment against the defendants should be limited to the proven loss of the investors who testified during the course of the trial, because there is no evidence that any investors, other than those who testified at trial, were defrauded by the AIC defendants. The AIC defendants also highlight the fact that Mr. Skaltsounis invested a large amount of his own money in AIC, that the majority of the investors never personally spoke with Mr. Skaltsounis, and that Mr. Skaltsounis had no prior violations of the securities laws during the course of his career in the financial industry. In addition, the AIC defendants argue that there should not be any civil penalty in this case given the lack of proof as to the number of violations alleged by the SEC.

A.  **Permanent Injunctive Relief**

The SEC first argues for a permanent injunction enjoining each of the AIC defendants from future violations of Securities Act Sections 5(a), 5(c), and 17(a), along with Exchange Act Section 10(b) and Rule 10b-5 thereunder. "A permanent injunction is appropriate where the SEC has shown 'a reasonable and substantial likelihood that [the defendant], if not enjoined, would violate the securities laws in the future.'" *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 332 (6th Cir. 2013) (quoting *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984)). The Sixth Circuit has identified seven

4

relevant factors for determining whether there is a reasonable and substantial likelihood of future violations:

> (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurances, if any, against future violations; (5) the defendant's recognition of the wrongful nature of his conduct; (6) the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations; and (7) the defendant's age and health.

*SEC v. Quinlan*, 373 F. App'x 581, 858-86 (6th Cir. 2010) (quoting *Youmans*, 729 F.2d at 415) (internal quotation marks omitted). "No single factor is determinative," *Sierra Brokerage*, 712 F.3d at 332, and the Court is "'vested with broad discretion in deciding whether to grant injunctive relief,'" *id.* (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 424 (D. Md. 2005)).

In this case, having examined the evidence presented to the jury during the trial and the evidence presented in support of the SEC's summary judgment motion, the Court concludes that consideration of the relevant factors supports the issuance of a permanent injunction as to each of the AIC defendants. Regarding the egregiousness of the violations, the Court notes that the AIC defendants engaged in various violations of the securities laws during the course of their offerings from 2006-2009, during which time the AIC defendants received approximately $6.6 million from investors. AIC received investments in the form of promissory notes and subscription agreements from individuals who were unaccredited investors without registering their securities under Section 5 of the Securities Act. At least some of the account forms completed by investors showed on their face that the investors were not accredited [*See* Doc. 159 at 30-

5

33 (describing investors who did not qualify as accredited at the time they purchased securities)]. Trial evidence also showed that the AIC defendants failed to disclose to these or any other investors various financial information about AIC, including the fact that it was in debt, that the company was absorbing losses on an annual basis, having never had a profitable year, and that AIC was reliant upon new funds in order to pay its obligations. In addition, the AIC defendants misrepresented AIC's ability to pay off rollover letters in the amount of time set forth in the letters given their weak financial position. Although only eleven investors testified at trial, the majority of whom purchased securities from one of CB Securities' brokers, the SEC has submitted into evidence the promissory notes and subscription agreements for the forty-three investors who were either never told of AIC's financial problems or received false information relating to AIC's ability to repay its debts. The Court also notes that this conduct took place over the course of four years, during which time Mr. Skaltsounis, as AIC's chief executive, could have corrected the omissions and misinformation going to investors. As trial testimony showed, Mr. Skaltsounis oversaw the issuance of each of the promissory notes and subscription agreements at issue, as well as the rollover letters, during which time he had various opportunities to correct the misinformation being given to investors yet failed to do so.

These facts not only speak to the egregiousness of the violations, but also support a finding that a permanent injunction is appropriate under the second *Youmans* factor, that is, the repeated and extensive nature of the defendants' violations of both the

6

Securities and Exchange Acts, respectively. Although the acts in question were part of the same overall fundraising effort, Mr. Skaltsounis repeatedly failed to correct the misinformation given to investors, as previously discussed. With at least some of the investors, such as Claire Barrett, Alfred Holden, and Clarice Newman,[3] who received multiple promissory notes after rolling over their investment, evidence presented at trial showed that Mr. Skaltsounis failed to disclose AIC's true financial state and inability to pay its obligations when issuing either the rollover letter or new promissory note to these investors. In addition, when the AIC defendants issued subscription agreements obtained by Mr. Graves, they did so knowing each time that his investors were not provided with AIC's financial information. The Court thus finds that the actions of the AIC defendants, including Mr. Skaltsounis, indicate that they were engaged not in isolated but rather repeated violations.

This conclusion, in turn, supports an inference that, absent a permanent injunction, the AIC defendants are likely to engage in future violations of the securities laws. *See Sierra Brokerage*, 608 F. Supp. 2d at 972 (noting that existence of past violations may create inference as to future violations). While the AIC defendants argue that a permanent injunction is unnecessary, given that Mr. Skaltsounis had never previously violated the securities laws, the Court nonetheless concludes that the extended and repeated nature of the AIC defendants' acts of omission and misinformation support permanent injunctive relief. *See SEC v. Bravata*, --- F. Supp. 2d. ---, 2014 WL 897348,

---

[3] The Court also notes that the SEC submitted undisputed evidence that Ms. Newman was an unaccredited investor, as discussed in the Court's Memorandum Opinion and Order finding in favor of the SEC on its claim that the AIC defendants violated Section 5 of the Securities Act [*See* Doc. 159 at 32].

at *21 (E.D. Mich. Mar. 6, 2014) (finding permanent injunction appropriate where, among other factors considered, violations of securities laws took place over period of three years and involved hundreds of investors).

Turning to the degree of scienter involved, which "bears heavily on the decision to issue an injunction[,]" *SEC v. Marker*, 427 F. Supp. 2d 583, 591 (M.D.N.C. 2006), the Court initially notes that the jury's finding of liability on the SEC's Section 10(b) and Rule 10b-5 claims both required a finding of scienter. In addition, as the SEC points out, the jury's finding of liability as to Mr. Skaltsounis under the aiding-and-abetting provisions of Section 20(e) required it to find that he knowingly assisted another in a violation of the securities laws. In addition to the jury's conclusions, the Court finds the evidence of record indicates a degree of scienter that supports the imposition of permanent injunctive relief.

Throughout the course of this litigation, including in their brief opposing the SEC's request for final judgment, the defendants have argued that they acted based upon the advice and with the approval of their outside counsel, Mr. Tom Grant. In granting the SEC's motion for partial summary judgment, however, the Court noted that the AIC defendants, as well as AIC's board members and employees, failed to point to specific times at which Mr. Grant was consulted or specific advice that was provided to them by Mr. Grant [*See* Doc. 159 at 18]. The Court also found that Mr. Grant was not consulted nor did he individually review the specific subscription agreements and promissory notes later found to have been issued to unaccredited investors [*Id.* at 17]. Moreover, during

8

his testimony at trial, Mr. Grant indicated he had in fact given advice to the AIC defendants, including Mr. Skaltsounis, but that, often, his advice was not followed or he was not consulted before actions were taken. In particular, Mr. Grant testified that he had reviewed a disclosure document that was to be given to noteholders in 2006, yet there was no evidence presented either by defendants or by noteholders that any disclosures about AIC's financial condition were actually received. The SEC also submitted evidence of various draft subscription agreements to which Mr. Grant testified he had made edits and changes in February 2009, particularly noting that AIC was not a newly formed company, that it had not been profitable, and that there needed to be assurances that the subscriber had read the proposed risk disclosures. These edits, however, were not incorporated into subscription agreements that were being signed by Mr. Skaltsounis and issued to investors as late as September 2009.

In addition to evidence indicating that the AIC defendants disregarded the advice of their counsel, there was also evidence presented that, while issuing promissory notes and soliciting investors to renew their promissory notes, the AIC defendants knew that they were unable to satisfy their outstanding note obligations, much less take on more debt. The undisputed financial evidence presented by the SEC indicated that, for many of the promissory notes issued, throughout the duration of the note and up to its maturity, defendant lacked the available assets to pay what investors were owed. One of the most common ways in which AIC "paid off" its notes, as indicated by the rollover letters, was by issuing new notes to be cashed in at a later date, information which was not disclosed

9

to investors. Finally, with regard to the AIC defendants' violations of Section 5 of the Securities Act, defendants argued that they relied upon the experience and knowledge of CB Securities' brokers, such as Mr. Graves, who solicited investments, to assure that investors were accredited. Several of the account forms from these investors, however, show, on their face, that the investors were unaccredited [*See* Doc. 159 at 30-31], and yet, without any verification as to their accredited status, they received AIC notes signed by Mr. Skaltsounis. Viewing this evidence in light of the entire record, the Court finds that the level of scienter among the AIC defendants favors issuance of permanent injunctive relief.

Turning to the remaining factors, that is, the defendants' recognition of wrongdoing, their assurances against future violations, and the likelihood of their committing future violations, the Court notes that there has been no evidence indicating that the AIC defendants have recognized their wrongdoing or made assurances that they would not commit future violations of the securities laws, if given the opportunity. The defendants' response to the SEC's motion for final judgment, in large part, reiterates the argument made throughout the course of this litigation but which has been rejected by the Court and by the finder of fact, that the actions attributed to AIC were approved by AIC defendants' legal counsel. Such argument, particularly at this stage of the litigation, does

10

not indicate that the AIC defendants recognize the wrongfulness of their actions.[4] Although there was evidence at trial of Mr. Skaltsounis being unable to make a living in the securities industry based on his reputation being damaged by the SEC's allegations, as well as his age, the Court finds that such evidence does not outweigh the other factors in considering whether to impose a permanent injunction.[5]

Accordingly, in consideration of all the *Youmans* factors as to each of the defendants and in light of the evidence of record, the Court finds that a permanent injunction is appropriate as to AIC, CB Securities, and Mr. Skaltsounis.

### B. Disgorgement and Pre-Judgment Interest

The SEC next moves for disgorgement against the AIC and relief defendants. In support of its position in this regard, the SEC submitted a report from its expert witness, Mr. Ray Stephens, containing his conclusions as to the amount by which the AIC

---

[4] While the AIC defendants raise several arguments as to the sufficiency of the evidence, in that the jury could not have properly applied the law given the time in which they returned a verdict, the Court finds these arguments more appropriate in the context of an appeal or other request for post-trial relief, rather than in deciding, based on the jury's verdict, the appropriate relief at this juncture.

[5] The AIC defendants also argue that a permanent injunction would act as a permanent ban on Mr. Skaltsounis from participating in the securities industry; however, this question is not before the Court, and the scope of any injunction would be to enjoin Mr. Skaltsounis, and the corporate defendants, from future violations of the securities laws for which they were found to have violated. The Court thus makes no finding as to whether Mr. Skaltsounis should be banned from any future involvement in the securities industry. *See* 15 U.S.C. § 80b-3(f) (granting SEC authority to censure, suspend, or bar member of investment adviser or securities dealer following notice and opportunity for hearing).

defendants and relief defendants benefitted from the AIC defendants' violations of the securities laws.[6]

"Disgorgement is an equitable remedy which removes ill-gotten gain by forcing surrender of profits." *SEC v. Zada*, 2014 WL 354502, No. 10-CV-14498, at *2 (E.D. Mich. Jan. 31, 2014) (citing *United States v. Universal Servs. Mgmt.*, 191 F.3d 750, 760, 763 (6th Cir. 1999)). "The purpose of disgorgement is to force a defendant to give up the amount by which he was unjustly enriched rather than to compensate the victims of fraud." *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) (internal quotations and citation omitted).

> The amount of 'disgorgement need only be a reasonable approximation of profits causally connected to the violation,' and once the government has offered sufficient evidence to establish that reasonable approximation, the defendant is 'then obliged clearly to demonstrate that the disgorgement figure was not a reasonable approximation.'

*Bravata*, 2014 WL 897348, at *20 (quoting *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231-32 (D.C. Cir. 1989)). A court may also include prejudgment interest to the disgorgement amount "to avoid a defendant benefitting for the use of his ill-gotten gains interest free." *SEC v. Conaway*, 697 F. Supp. 2d 733, 747 (E.D. Mich. 2010) (citing *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)).

In this case, the SEC's expert witness examined the financial records of both AIC and its subsidiaries, CB Securities, Waterford, Advent, and CBS Advisors, as well as payments made to Mr. Skaltsounis, to determine the amount by which each of the

---

[6] The Court notes that the defendants' written response does not address the issue of disgorgement.

defendants profited from AIC's misrepresentations and other violations. Having reviewed Mr. Stephens's report, as well as the other arguments of the SEC, the Court finds that the proposed disgorgement amounts and prejudgment interest amounts are a reasonable approximation of the benefits conferred upon the defendants and relief defendants. In reaching this conclusion, the Court makes several observations, taken both from Mr. Stephens's report and the record as a whole. First, the companies' financial records indicate that AIC and all of its subsidiaries were operating at a loss during the 2006-2009 time period and that AIC's debt obligations substantially outweighed its assets. Next, all of the cash AIC had on hand during this time period was obtained by raising capital in the forms of selling stocks and notes [Doc. 206-2 at 16] and approximately $6.6 million was raised during this time period [*Id.* at 12]. As the evidence at trial showed, other than some de minimis business from insurance commissions, AIC had no other means to generate cash because its subsidiaries were also operating at a loss and were unable to transfer funds to AIC. Rather, AIC had to transfer funds to the subsidiaries in order to keep them in operation, since they too had no other source of income [*See id.* at 12]. Thus, given that AIC had no other source of consistent revenue other than through the sale of stock and notes, the funds received by the subsidiaries during this time period were derived from the proceeds of these sales and are subject to disgorgement. The undisputed amounts of capital contributions made to each of the subsidiaries during the relevant time period, that is, January 2006 through November 2009, were as follows: (1) $2,830,946.00 to CB Securities; (2) $516,150.00 to

13

Advent; (3) $541,000.00 to Waterford; and (4) $58,687.00 to CBS Advisors [*See* Doc. 159 at 38; Doc. 206-2 at 6].[7] The Court finds these amounts to be subject to disgorgement, as well as prejudgment interest, along with the $6,647,540.00 attributable to AIC.

In addition to funds distributed to the subsidiaries, the SEC also seeks disgorgement and interest of the funds distributed to Mr. Skaltsounis in the form of salary, advances, loans, and the distribution of dividends and interest over the same time period. Mr. Stephens's report includes each transfer to Mr. Skaltsounis from January 1, 2006 through November 30, 2009, not only from AIC but also from the subsidiaries. The total amount of funds, Mr. Stephens concluded, came to $948,389.13. Having reviewed this portion of the report, the exhibits attached thereto, and the record, the Court finds this amount to be a reasonable approximation of the benefits Mr. Skaltsounis received as a result of the securities violations. Again, the evidence shows that the only source of revenue available to pay Mr. Skaltsounis was from the issuance of notes and stocks.

Accordingly, disgorgement will be entered along with prejudgment interest as to each of the defendants and relief defendants in the amounts requested by the SEC.

### C. Civil Penalties

Finally, the SEC requests third-tier civil penalties against each of the AIC defendants, amounting to totals of $27,950,000 each for AIC and CB Securities, and

---

[7] Although the relief defendants attempted to argue they had a legitimate claim to these funds, and thus are not subject to disgorgement, the Court rejected this argument in granting the SEC's motion for partial summary judgment [Doc. 159 at 38].

14

$5,590,000 for Mr. Skaltsounis. The SEC argues that such amounts are appropriate because they represent the equivalent of a civil penalty being afforded for each of the forty-three investors who were defrauded and reflect the egregiousness of the violations. The AIC defendants argue, in response, that no civil penalty should be imposed in this case and that to do so in the amounts requested by the SEC would constitute the imposition of punitive damages.

Section 20(d) of the Securities Act and Section 21 of the Exchange Act authorize the imposition of civil penalties, which serve to deter violations of the securities laws. 15 U.S.C. § 77t(d)(1)(c); 15 U.S.C. § 77u(d)(3)(B)(iii); *see SEC v. Salyer*, No. 2:08-cv-179, 2010 WL 3283026, at *5 (E.D. Tenn. Aug. 18, 2010) (noting that civil penalties serve purpose of deterrence); *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996) ("Civil penalties are designed to punish the individual violator and deter future violations of the securities laws."). Section 20(d) establishes three tiers of penalties: the first-tier penalty allows up to a maximum of $6,500 per violation for natural persons and $60,000 per violation for corporations; the second-tier penalty allows up to a maximum of $65,000 for individuals and $325,000 for corporations for an act involving fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and the third-tier penalty allows provides for a maximum of $130,000 per violation for individuals and $650,000 for corporations for an act involving fraud or deceit and if the

15

violation directly or indirectly resulted in substantial losses or created a significant risk of loss. 15 U.S.C. §§ 77t(d)(2)(A)-(C).[8]

Although the statutory tier determines the maximum penalty, the "actual amount of the penalty [is] left up to the discretion of the district court." *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005); *SEC v. Tourre*, --- F. Supp. 2d ---, 2014 WL 969442, at *11 (S.D.N.Y. Mar. 12, 2014). Courts consider various factors in determining the appropriate penalty, including but not limited to:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Murray*, No. OS-CV-4643 (MKB), 2013 WL 839840, at *4 (E.D.N.Y. Mar. 6, 2013) (quoting *SEC v. Pentagon Capital Mgmt. PLC*, No. 08 Civ. 3324 (RWS), 2012 WL 1036087, at *2 (S.D.N.Y. Mar. 28, 2012), *vacated in part on other grounds*, 725 F.3d 279 (2d Cir. 2013)). These factors, however, merely provide guidance, as "the civil penalty framework is of a 'discretionary nature' and each case 'has its own particular facts and circumstances which determine the appropriate penalty to be imposed.'" *SEC v. Opulentia, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007) (quoting *Moran*, 944 F. Supp. at 296-97).

---

[8] The Court notes that these amounts reflect the penalty amounts set forth in the regulations adjusting the civil penalties for violations occurring after February 14, 2005, as noted by the SEC in its brief [Doc. 206 at 20 (citing 17 C.F.R. § 201.1003, tbl. III)].

Turning first to the corporate defendants, AIC and CB Securities, the Court finds that a third-tier penalty in the maximum amount of $650,000 per violation is warranted by the facts and circumstances of the case. As to how "per violation" should be interpreted, the Court notes that other courts have interpreted the phrase to mean: (1) per claim brought against the defendant; (2) per misrepresentation made by the defendant; or (3) per investor defrauded by the defendant. *Bravata*, 2014 WL 897348, at *22 (citing cases). Here, the Court finds that calculating the number of violations by the number of investors is appropriate as doing so balances the need to punish the corporate defendants and deter future violations against the practical difficulty in ascertaining each of the misrepresentations or material omissions made to AIC's investors. *See id.* (noting difficulty in determining discrete misrepresentations where there were 440 individual investors). Although defendant argues that there is no way to determine which of the forty-three investors proffered by the SEC were defrauded, as only eleven of these investors testified at trial, the SEC submitted the promissory notes, rollover notes, and/or subscription agreements for each of the forty-three non-insider investors. These documents, along with the oral statements made to investors by Mr. Skaltsounis, co-defendants Mr. Graves and Mr. Guyette, as well as broker Carol LaRue, all contain the same basic misrepresentations and omissions. In other words, none of the investors were given the proper disclosures, and were in fact led to believe that they would receive a strong return on their money when, in fact, the majority lost their entire investment.

17

As to the various factors courts use to determine the appropriate penalty amount, the Court has already discussed the egregiousness of the violations, their recurrent nature, as well as the level of scienter with which both of the corporate defendants acted, all of which the Court incorporates into its analysis regarding the statutory penalty. Over the course of four years, the defendants raised over $6 million, giving investors the impression that AIC was a newly formed company that would begin reaping profits from its subsidiaries in the near future, when, in reality, AIC had been operating at a loss since its inception and was dependent upon raising capital to keep itself and its subsidiaries in operation. In doing so, and contrary to defendants' assertions, the defendants did not adhere to the advice of their outside counsel and failed to disclose material information to investors. The AIC defendants also solicited promissory notes from individuals knowing that AIC lacked the assets to pay those notes back. Regarding the loss involved in this case, the evidence at trial showed that many of AIC's investors lost their total investment, and, at the very least, defendants' acts of taking on debt that it would not be able to repay and failing to disclose such facts to investors created a risk of substantial losses. Thus, the Court finds a penalty of $650,000 for each of the forty-three investors, for a total of $27,950,000, is appropriate as to AIC and CB Securities.

Although the Court finds that a third-tier level penalty is also appropriate for Mr. Skaltsounis, the Court concludes that a lesser amount than the maximum $130,000 is appropriate under the circumstances of this case. As previously discussed, Mr. Skaltsounis's actions in this case were egregious in that he signed various promissory

18

notes and subscription letters knowing or, at the least, recklessly disregarding the fact that investors were not aware and were not informed of AIC's true financial state, and did so over the course of four years. These actions, in conjunction with Mr. Skaltsounis's lack of apology or assurances that he would not engage in such conduct again, illustrate the need for a civil penalty that not only serves as punishment in this case but also serves as a deterrent for future violations. At the same time, however, other factors weigh in favor of a lesser penalty than the $5,590,000 requested by the SEC. The Court first notes that this proposed penalty amount is more than five times the disgorgement amount requested by the SEC, which represents the actual benefit Mr. Skaltsounis received. Unlike those cases where defendants use the proceeds of their schemes to live a "lavish lifestyle," *see SEC v. Zada*, 2014 WL 354502, at *4, Mr. Skaltsounis's benefits in this case merely represent his salary, dividends and interest which would have otherwise been earned in the normal course of his occupation. There is no evidence to support the conclusion that Mr. Skaltsounis's actions were so egregious, or the benefit derived from his actions so great, as to warrant a penalty which is only slightly less than the total amount of funds raised by the defendants' violations.

In addition, the Court notes that, given the fact that Mr. Skaltsounis has never before been convicted or found liable for a violation of the securities laws, the disgorgement judgment and permanent injunction, combined with a lesser penalty, will, collectively, serve as meaningful punishment and have a meaningful deterrent effect in preventing future violations. Mr. Skaltsounis did not submit specific evidence of his

19

financial condition in response to the SEC's motion for judgment, but there was testimony and evidence of his financial difficulties presented at trial. Mr. Skaltsounis's financial difficulties do not obviate the need for a civil penalty entirely, *see SEC v. Kane*, No. 97 Civ. 2931, 2003 WL 1741293, at *4 (S.D.N.Y. Apr. 1, 2003), but are a factor the Court may consider in reducing a penalty, *SEC v. Hedgelender*, 786 F. Supp. 2d 1365, 373 (S.D. Ohio 2011) (reducing penalty to second-tier for individual defendants, based on financial condition, but imposing third-tier penalty for corporate defendants). In light of the facts of this case, the Court finds a third-tier penalty in the amount of $35,000 per investor appropriate as to Mr. Skaltsounis, resulting in a total civil penalty of $1,505,000.

## III. Conclusion

For the reasons previously stated, the SEC's Motion for Entry of Final Judgment [Doc. 205] will be **GRANTED in part** and **DENIED in part** to the extent discussed herein and as more fully set forth in the orders of Final Judgment as to each defendant which will be contemporaneously entered with this Memorandum Opinion. The Court finds that the SEC is entitled to a permanent injunction as to the AIC defendants, that both the AIC and relief defendants are subject to disgorgement, and that the AIC defendants are also each subject to a statutory penalty in the amounts previously discussed.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE